[No. 8266. Department Two. December 2, 1909.]

GRIFFITH DAVIES et al., Appellants, v. PETER WICKSTROM,
Respondent.[1]

BOUNDARIES—DESCRIPTION—CONFLICTING CALLS. Where courses
and distances are conflicting, there is no invariable rule that one
should control the other, or that calls are controlling in their order,
if there are other aids in determining the intent of the parties.

SAME—CONSTRUCTION BY PARTIES. Where the calls in a descrip-
tion are conflicting, the construction placed thereon by the parties
in locating the lines on the ground may be resorted to, and is con-
clusive as between the parties.

SAME—CONSTRUCTION BY PARTIES—NOTICE—BONA FIDE PURCHASER.
The building and maintenance of a line fence, with adverse pos-
session of the land inclosed, under the consent of the grantor and
his successors in interest, is sufficient to put a purchaser upon in-
quiry as to the contemporaneous construction placed by the parties
upon conflicting calls in the description.

ADVERSE POSSESSION—EVIDENCE—SUFFICIENCY. Title by adverse
possession is shown where it appears that the purchaser inclosed the
land by a fence upon the supposed line in 1895, at once starting a
clearing, set out an orchard in 1896 and cared for the trees ever
since, and maintained the fence and used the land for ten years
continuously, at all times claiming to own it.

[1]Reported in 105 Pac. 454.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered November 25, 1908, upon findings in favor of the defendant, after a trial before the court without a jury, in an action of ejectment. Affirmed.

*George E. de Steiguer*, for appellants.

*Bausman & Kelleher*, for respondent.

PARKER, J.— This is an action of ejectment by which the plaintiffs seek to recover from the defendant certain land in West Seattle, which they claim he is unlawfully withholding from them. Trial was had by the court without a jury, resulting in findings and judgment in favor of defendant, from which plaintiffs have appealed.

Reference to the accompanying plat, compiled from the record, which shows approximately the lines and land in dispute, will render the facts more readily understood, in connection with a statement of them. The substance of the findings made by the trial court are, that in 1874, by mesne conveyances from the United States, the defendant became possessed in fee simple, of lot 1, of Section 10, Township 24, North, of Range 3, East, which includes the land in controversy; that in 1876 he sold and conveyed to Jacob R. Olsen and Jahan Brygger a portion of lot 1, described as follows:

"Commencing at the southeast corner of Lot 1 of Section 10, Township 24, North of Range 3 East, and running thence west along the south boundary line of said Lot 1, 9 chains and 87 links; thence north 30° 26' west 20 chains to the meander line of the shore of Puget Sound; thence along said meander line north 47° east 6 chains and 6 links, to the mouth of a small brook; thence south 37° 57' east 7 chains and 35 links; thence east 10 chains and 1 link to the section line between Sections 10 and 11; thence south along said section line 16 chains and 46 links to the place of beginning."

.PLAT OF LOT I.

X—Land in dispute.
D—Mouth of small brook.

That soon after the sale and conveyance, the defendant and his grantees measured along the shore line of Puget Sound a distance of 6.06 chains southwesterly from the mouth of the small brook mentioned in the deed, and established the dividing line between their respective lands, this being the line BC′, intended to be described in the deed; that in the spring of 1895 defendant built a fence upon the line so established, which, together with others, enclosed the land in controversy; that defendant has maintained said fence and enclosure sub-

stantially ever since; that since the building of the fence de-
fendant has uninterruptedly by himself and his agents and
tenants, cleared, improved and cultivated portions of the
land, and for more than ten years prior to the commencement
of this action has been in the actual, open, notorious, visible
and uninterrupted possession of the land, and is now in pos-
session thereof, and during all of said time he has asserted
the right of ownership and possession of said land adverse
to plaintiffs and to all the world. Plaintiff's counsel excepted
to these findings, especially to the portions relating to estab-
lishing of the line, building the fence thereon, and acts of
adverse possession; and requested findings favorable to plain-
tiffs as successors in interest, by mesne conveyances, of Olsen
and Brygger; which being refused, noted exceptions to such
refusal.

Learned counsel for appellant makes two general conten-
tions, which are in substance, that the trial court erred in
holding, (1) that the deed from defendant to Olsen and
Brygger did not convey the land in controversy; and (2)
that defendant's adverse possession was such as to give him
good title to the land involved.

It is plain that the calls in the deed of defendant to Olsen
and Brygger, are not consistent, in that the course given for
the southwestern boundary, BC, if followed literally, will ex-
tend the northwestern or waterfront boundary, CC'D, about
141 feet in addition to the 6.06 chains called for in the de-
scription. This is on the assumption that the mouth of the
small brook was, at the date of the deed, and has at all times
since then been, in the same place, which we think is fully
warranted by the evidence. It is argued by counsel for ap-
pellant that the course of the call BC, must control the length
of the call C'D, because, (1) "If there is an inconsistency
between different calls, ordinarily the first call controls"; and
(2) "If there is an inconsistency between distance and direc-
tion, direction controls." While there are decisions of the
courts which, in a measure, seem to recognize these rules as

aids in arriving at the true intention of the parties to a conveyance, we do not think any such rules can be deduced from the decisions so as to be made of universal application. The degree of aid such rules may render in controlling inconsistent calls in a description will necessarily be affected to the extent that other legitimate aids are present or absent. In Warvelle on Vendors (2d ed.), § 377, it is stated:

"It is often stated, as a general proposition, that course controls distance, yet there is no universal rule that obliges us to prefer one to the other; and when natural and ascertained objects are wanting, and the course and distance cannot be reconciled, one or the other may be preferred according to circumstances."

In the case of *Preston's Heirs v. Bowmar*, 6 Wheat. 580, 582, 5 L. Ed. 336, Justice Story, speaking for the United States supreme court, said:

"It may be laid down as an universal rule, that course and distance yield to natural and ascertained objects. But where these are wanting, and the course and distance cannot be reconciled, there is no universal rule that obliges us to prefer the one or the other. Cases may exist in which the one or the other may be preferred upon a minute examination of all the circumstances."

See, also, *Loring v. Norton*, 8 Me. 61.

We believe the question of whether or not the calls will be controlling according to their order should also be determined upon the principle announced by these authorities, and that the rules sought to be invoked by learned counsel, whatever their influence may be in the absence of all other aids, they do not, by any means, have that degree of force the law gives to the rule which controls courses and distances by physical monuments upon the ground. The case of *Stokes v. Curtis*, 49 Wash. 235, 239, 94 Pac. 1083, is cited as an instance where this court held the first call controlled the second. But it appears in that case, that the latter call, being one of distance, read, "more or less", thus rendering it less certain than the former call, which read "east", unqualified. In the

cases of *Den ex dem. Harry v. Graham,* 1 Dev. & B. (N. C.) 76, 27 Am. Dec. 226; and *Blackburn v. Nelson,* 100 Cal. 336, 34 Pac. 775, cited by counsel, the calls were held to be controlling in their order, but in those cases there seems to be an entire absence of all other aids in determining the intent of the parties. Our attention has not been called to any decision where the rule has been controlling, save in the absence of all other aids.

What have we then, beyond the uncertain and inconsistent language of these calls in the description, to assist us in arriving at the intention of the parties as to the land conveyed? It is elementary that when the language of the description renders the location of the land doubtful by insufficient or inconsistent description, the construction put upon the deed by the parties in locating the premises upon the ground may be resorted to for the purpose of determining their intention. 1 Warvelle, Vendors (2d ed.), §§ 373-4; 2 Devlin, Deeds (2d ed.), § 1042; 13 Cyc. 627.

The finding of the trial court to the effect that the parties located the line BC′ upon the ground soon after the execution of the deed, as their common boundary, is challenged by appellants' counsel as not being warranted by the evidence. We have read all of the evidence and are of the opinion this finding is fully sustained. If this controversy was between the respondent and his original grantees, there would be nothing further in the cause to determine. Their own construction of the deed would determine their rights.

What is there to give notice to the successors in interest of Olsen and Brygger, as these appellants have become by mesne conveyances, that this is the construction the parties gave to the deed? There is evidence which we think warrants the conclusion that about the year 1878 the respondent built a fence upon the line BC′ running back from C′ as far as the southeasterly end of the land here in dispute to the foot of the hill, beyond which the land lays on a steep hillside, and that such fence remained there with the knowledge and con-

sent of his grantees Olsen and Brygger, at least until after they parted with title to their land by ·deed to William H. Hughes and his associates in December, 1882, which deed describes the land in the same language as in the deed from respondent to Olsen and Brygger, the third call therein being "*6 chains and 6 links to the mouth of a small brook.*" Just how long this fence remained there is not clear, but it was removed while Hughes and his associates owned the adjoining land, and we think the evidence shows the removal was not by consent of respondent. Prior to 1895 William H. Hughes and wife acquired the interest of their associates. This brings us to the building of the fence by respondent on the line BC', in 1895, which with other fences inclosed the land in dispute with other land of respondent. This was the beginning of respondent's present adverse possession, as found by the trial court.

The appellants acquired their interest in the land from William H. Hughes and wife in July, 1897, by a deed which purported to convey the land in controversy with other land to the northeast. The evidence we think is clear that at that time the fence which respondent had built in 1895 on the line BC', which with others inclosed the land in dispute, was still there, and that respondent's possession was of such an open and notorious character as to inform the appellants he was then claiming to that line. This fence and possession of respondent was, we think, also sufficient to put the appellants upon inquiry and suggest to them the probability of that being the line intended as the southwestern boundary of the land described in the two earlier deeds upon which the title they were then acquiring rested.

As to the evidence of respondent's continuous adverse possession following 1895, it is very voluminous and somewhat conflicting. However, it tends strongly to show, that he commenced to clear the land soon after inclosing it in 1895; that he set out a portion of the land to orchard, together with his other land adjoining, in the fall and winter of 1896-7,

then planting upon the disputed land 20 or 25 trees which have been cared for ever since; that he built a corduroy road along and near the fence on the line BC', and also a gate in his water front fence near C' which have been maintained and used by him since inclosing the land; that he maintained the fence built in 1895 until the bringing of this action, though it also appears there were portions of the time when it became in a bad state of repair along the northerly portion (about one-half) of the land in dispute, which portion is low and at times covered by the tide. It is clear that respondent at all times claimed to own the land. In view of all the evidence, we think the learned trial court was fully warranted in concluding that respondent was in continuous, visible possession of the land in controversy, adverse to appellants, accompanied by claim of ownership therein, for more than ten years prior to the commencement of the action. *Bellingham Bay Land Co. v. Dibble,* 4 Wash. 764, 31 Pac. 30; *Northern Pac. R. Co. v. Spokane,* 45 Wash. 229, 88 Pac. 135; 1 Cyc. 1022.

We are of the opinion that the judgment should be affirmed. It is so ordered.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.