[No. 14288.  *En Banc.*  November 13, 1918.]

MARY E. WICK, *Appellant,* v. WESTERN UNION LIFE
INSURANCE COMPANY, *Respondent.*[1]

CONTRACTS (57)—CONSTRUCTION—INTENT OF PARTIES.  The most
important rule for the construction of contracts is that the intent
of the parties must govern, to be gathered from the contract as a
whole and not from detached parts; and a clumsy arrangement of
words, coupled with the "comma fault," will not contravene a
reasonable interpretation according to the intention.

INSURANCE (103) — NONPAYMENT OF PREMIUM — EXCUSES — CON-
STRUCTION OF POLICY—NOTICE OF DISABILITY.  Notice of total dis-
ability must be given prior to default and cancellation for nonpay-
ment of premiums, under a policy of life insurance, providing that
if the insured, before attaining the age of sixty, shall furnish proof
that he "has," before default, become wholly disabled, the company
shall pay for him all premiums "which shall. become due" during
the continuance of the disability; especially in view of other pro-
visions of the policy requiring insured, upon request, to give proof
of continuance of the disability, and limiting the period of grace
for payments to one month pursuant to Rem. Code, § 6059-184,
during which time the policy "shall remain in full force and effect."

Appeal from a judgment of the superior court for
Columbia county, Miller, J., entered January 19, 1917,
upon findings in favor of the defendant, dismissing an
action on a life insurance policy, tried to the court.
Affirmed.

*R. M. Sturdevant, Kuykendall & McCabe,* and *M. F.
Gose,* for appellant.

*Graves, Kizer & Graves,* for respondent.

MITCHELL, J.—This case was tried in the lower
court upon the pleadings and stipulated facts.  There
was judgment for defendant dismissing the action,
and plaintiff appeals.

The material facts admitted are substantially as

[1]Reported in 175 Pac. 953.

follows: Respondent is a domestic life insurance company with its home office at Spokane. It has been engaged in business for a number of years, has a large and well established business, being well known in Spokane and throughout the state. One George William Eyre was an unmarried man and taught school at various points, making visits during vacations to his mother's home in Dayton, which he claimed as his place of residence. On May 1, 1914, in consideration of $23.70, paid by him, respondent made and delivered to him a policy of life insurance. The policy, among other things, contains a total disability clause as follows:

"Total Disability. If the insured, before attaining the age of sixty years, shall furnish due proof that he has, before default in the payment of any premium, become wholly disabled by bodily injury or disease and will be permanently, continuously and wholly prevented thereby from pursuing any and all gainful occupations, the company will pay for said insured all premiums which shall become due and payable during the continuance of such disability.

"The premiums so paid shall not become a charge against the insured, and the values in the table of page two hereof shall increase in the same manner as if the premiums were being paid by the insured. The insured shall, upon due date of any premium, if so required by the said company, furnish due proof of the continuance of such disability. If the insured shall fail to furnish such proof, the company's obligation to pay the premiums hereunder shall cease and the insured shall then resume payment of premiums."

Appellant is the mother of George William Eyre and is named as the beneficiary in the policy. The insured was employed, during the school year of 1914-15, to teach in the public school at Waitsburg, near Dayton. In the latter part of 1914, he became indisposed from a tumor on the brain and was given

a vacation from some time in December, 1914, to the latter part of January, 1915, when he returned to work. His health grew worse. He suffered from headaches, attacks of dizziness, and occasionally fainted; until about March 31, 1915, because of bad health, he could not properly discharge his duties as teacher. His health was such as to impair the general efficiency of the school, whereupon he was relieved by the school board. He died on December 31, 1915, as a result of the tumor. After March 31, 1915, he was unable to teach school or follow any vocation, and was, by his disease, permanently, continuously and wholly prevented from pursuing any gainful occupation within the meaning of the total disability clause of the policy of insurance. While his physical condition so affected his mind that he was incapable of sustained mental effort, he was at no time insane or imbecile, and during the greater part of the time was capable of receiving and understanding communications made to him. He lived with his mother at her home after March 31, 1915. Respondent was not informed of the unfortunate condition of the insured or any reason for nonpayment of premium on the policy until about October 22, 1915, when notice of the disability and a request for advice as to the nature and amount of proof necessary was given by an attorney for the insured. About thirty days before the annual premium became due on May 1, 1915, respondent gave the insured notice thereof by mail, addressing him at his post office address at Dayton. Again, about May 13, 1915, respondent mailed to the insured a letter calling attention to the nonpayment of the annual premium and cautioning him not to overlook it and that the thirty days of grace allowed by the policy would soon be up, and further stating that the

company was ready to extend assistance by permitting semi-annual or quarterly premium payments if preferred. Again, on June 3, 1915, respondent wrote as follows:

"Western Union Life Insurance Company,
    "Spokane, Washington.
"Mr. Geo. W. Eyre,      No. 13686      June 3, 1915.
    "Dayton, Washington, 5th & J.

"Dear Sir: We notice that the grace allowed by the company in the payment of the premium on your policy No. 13686 expired 6-1-15 and we wish to know if this is intentional or otherwise on your part.

"If you are doing so because you are temporarily short of the necessary funds, we wish you to let us know what arrangement you would like to make to defer the payment of part of the premium.

"If you wish, the same can be changed to either semi-annual or quarterly payments, and in fact almost any reasonable arrangement can be made if you will only let us know your wishes in the matter.

"In any case drop us a line stating your intention and oblige,                Yours very truly,
                              "J. N. Wright,
                                "Secretary."

This last letter manifestly proceeded out of consideration of the company for the insured, because the provision in the policy for reinstatement after it had lapsed for nonpayment of premium depends upon a written application therefor by the insured. None of the three letters was returned, nor was any answer ever made to either by Eyre or any one in his behalf. Afterwards, and prior to the receipt of the notice of disability through the attorney for the insured in October, 1915, respondent canceled the policy upon its records. The premium falling due on May 1, 1915, was never paid, nor was there any application for reinstatement.

The case involves a construction of the contract of insurance. The respondent contends the disability clause of the contract must be held to mean that, if the insured, under an *existing* policy, demand that the insurer pay subsequently accruing premiums, accompanying such demand with due proof of total disability, it must pay such premiums so long as the disability continues, and thus preserve the policy in force, but that such obligation is not placed upon the company where the demand is made and proof of total disability furnished after the expiration of the grace period of thirty days from the premium due date, default in payment by the insured and cancellation of the policy by the company.

On the other hand, appellant contends the contract means, and says, that if, at any time before reaching the age of sixty years, the insured furnish due proof that he became totally disabled before default in the payment of any premium, then the company must pay for said insured all premiums, etc.

Appellant's counsel argue that the determination of the dispute requires an examination of the policy, from which it will appear that, in the last analysis, the total disability clause contains all of the policy which furnishes any aid.

Certain rules are recognized for the construction of written contracts for the purpose of ascertaining from the language the extent to which the parties intended to be bound; and it is the duty of courts to observe them and not attempt to vary, change, or withhold their application. The first and most important of such rules is that the intent of the parties, as expressed in the words they have used, must govern. With such understanding, counsel for appellant, protesting inability to see how there can be two opinions

as to what the total disability clause means, present their view by quoting from the clause as follows:

"If the insured, before attaining the age of sixty years, shall furnish due proof that he has, before default in the payment of any premium, become wholly disabled, . . . the company will pay for the said insured all premiums, etc."

And it is seriously contended, considering the words and punctuation, that the insured has, under this contract, until just before he is sixty years of age to furnish proof that, at some prior time (say a quarter of a century ago), while he was not yet in default of premium payment, he became totally disabled, without losing his rights under the contract.

A clumsy arrangement of words, even coupled with the "comma fault," will not be allowed to contravene a reasonable interpretation according to the intention of the parties at the time of using them.

In the language last above quoted, it is to be noticed that the word "has" is used only once. Now, if in its stead the word "had" or "did" was employed, and no portion of the policy on this particular point considered other than this thus altered, there would be force in the argument made; but the word "has" is quite significant. It is a word which is always used in the present tense. So that the words "shall furnish proof that he *has*" mean at the present time, and, taken in connection with the other language in the part of the total disability clause quoted, mean that he shall "*furnish*" the proof before "default in the payment of any premium."

In addition, the rule for the construction of contracts first mentioned is qualified or extended in such way that the intention of the parties is to be gathered, not from detached parts of the instrument, but from the whole of it. Other portions of the policy in this

instance may be noticed with advantage. Further on, in the total disability clause, in speaking of the payments the company will make for the insured, they are described as those "which *shall* become due and payable during the continuance of such disability." Not those which "did" or "had" become due, but those which "shall" become due. Thus showing the plan by which, if the insured become totally disabled and prevented thereby from pursuing any gainful occupation, and furnish proof thereof before default in the payment of any premium, then the company, for the insured, will make all payments of premiums which *shall* become due and payable during the continuance of such disability. Such a plan is manifestly designed to save the insured, in misfortune, from a forfeiture of his rights under a policy of "term insurance," which otherwise gives the insured only the right, upon the payment of a premium, to insurance upon his life for the term paid for, and the right to continue that insurance from term to term at the same rate.

Other language in this same clause may be considered. It provides:

"The insured shall, however, upon due date of any premium, if so requested by the company, furnish due proof of the continuance of such disability. If the insured shall fail to furnish such proof, the company's obligation to pay the premium hereunder shall cease and the insured shall then resume payment of premiums."

This provision contemplates a possible restoration of the insured from total disability (a change by no means improbable), whereupon the company in its turn is to be relieved from the obligation of paying premiums for the insured. But if appellant's idea of what this contract means shall prevail, when and by

what means shall the company ever know of any relief to the insured from total disability? Obviously, the insured would gain nothing by giving such information, but, on the contrary, would profit by withholding it until just before he became sixty years of age, or if he die before reaching that age, for his beneficiary then to furnish proof to the company that years ago, and prior to the expiration of a period of term insurance, the insured became totally disabled, and in either of such cases hold the company liable and thus deprive it of any possible opportunity under this part of the contract.

There are a number of other provisions in the policy that point this same way, only two of which need be considered. *First:* Under the clause "Consideration," it is stated to be "the advance payment in cash . . . of an annual premium of $23.70 for term insurance for one year ending on the first day of May, 1915, and the payment of an equal amount upon each anniversary date until the date of the death of the insured." *Second:* In the clause entitled "Grace in Payment of Premiums," it says: "In the payment of all premiums hereunder after the first policy year there will be allowed a grace of one month (not less than thirty days) . . . during which time this policy shall remain in full force and effect."

It is to be observed that the provision with reference to grace in payment of premiums is required by subd. 1, § 6059-184, Rem. Code, in all such life insurance policies after January 1, 1912. Clearly these two features, "Consideration" and "Grace in the Payment of Premiums," make the contract one of term insurance; that is, insurance in force during the term or period for which a consideration or premium has been paid and the grace period of thirty days. It is so declared by the words *"during which time this*

*policy shall remain in full force and effect,"* which words, of themselves, are at once useless unless they constitute a limitation as to time upon the vitality of the contract.

With what success shall it be contended that such language, which by the statute is required to be placed in all annual premium payment life insurance policies, is not out of harmony with the heavy obligations sought to be imposed upon the company by appellant's interpretation of the total disability clause of the policy?

Reading this contract as a whole, there is no doubt that the contention of respondent is correct.

The judgment of the trial court so construing it is affirmed.

PARKER, TOLMAN, MOUNT, CHADWICK, FULLERTON, MACKINTOSH, and HOLCOMB, JJ., concur.