[No. 16153. Department Two. April 15, 1921.]

EDMUND H. FAGAN et al., Appellants, v. A. C. WALTERS et al., Respondents.[1]

COVENANTS (17)—WARRANTY—KNOWLEDGE OF DEFECTS—EASEMENT. A covenant of warranty in a deed warrants against known as well as unknown defects and incumbrances, and knowledge on the part of the grantee, at the time of the existence of an incumbrance or defect, does not ordinarily militate against the covenants contained in the deed.

DEEDS (31)—EVIDENCE (175, 176)—AMBIGUITY—EVIDENCE TO AID CONSTRUCTION—INTENT. Under the rule that a patent ambiguity in a deed cannot be explained by parol evidence, a clause following a description in a deed to the effect that "All that portion of the above described property lying south of a line running from a point which lies north 1 degree 8″ west 16 feet from the true point of beginning to a point east 270 feet," could not be varied, in the absence of proof of mutual mistake, by proof that the description referred to an easement which was to be excepted from the operation of the warranty.

BOUNDARIES (2)—COURSES AND DISTANCES—MONUMENTS. A call in a deed from the meander line of Lake Washington, "thence northerly along said meander line 90.7 feet north; thence west along the north boundary of land sold and conveyed by William D. Simpson and wife to Isabelle Gibb," is controlled by the boundary of the Simpson tract, which constitutes a monument locative of the north boundary of the land conveyed, though fixing the distance at less than 90.7 feet from the meander line.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 26, 1920, granting a nonsuit and dismissing two causes of action for damages for breach of warranty of title. Reversed in one cause; affirmed in the other.

*Ryan & Desmond,* for appellants.

*Poe & Falknor* and *Judson F. Falknor,* for respondents.

[1]Reported in 197 Pac. 635.

Tolman, J.—Appellants as plaintiffs brought suit on two causes of action. At the close of their case in chief, a nonsuit was granted on both causes of action, followed by judgment of dismissal, from which they appeal.

The first cause of action, as set forth in the complaint and as supported by appellant's evidence, is substantially as follows:

Respondents, on the second day of October, 1916, for a valuable consideration, by a statutory warranty deed, conveyed to appellants the following described real estate:

"Beginning at an initial point, which lies 1111.68 feet south of and 933.7 feet east of the northwest corner of Section 35, Township 24, North Range 4 East; thence north 1 degree 8″ west 310.7 feet to the true point of beginning; thence east 230 feet, thence south 1 degree 8″ east 17.7 feet; thence east 500.86 feet to the meander line on Lake Washington; thence northerly along said meander line 90.7 feet north; *thence west along the north boundary of land sold and conveyed by William D. Simpson and Annie Simpson, his wife, to Isabelle Gibb on January 4, 1889, and recorded in Vol. 62 of Deeds, page 300,* to a point which bears north 1 degree 8″ west of the true point of beginning; thence south 1 degree 8″ east 73 feet to the true point of beginning; also all shore lands adjoining and directly in front of the above described property. *All that portion of the above described property lying south of a line running from a point which lies north 1 degree 8″ west 16 feet from the true point of beginning to a point east 270 feet.*"

We have italicized certain portions of this description in order to direct attention to the matters in controversy.

The consideration for this deed was a trade or transfer by appellants of certain real estate owned by them. At the time of the transfer, Fagan and White were

well acquainted, and had enjoyed previous business re-
lations with each other, and each had confidence in the
other; abstracts were furnished continued down to
date by the respective parties to the transfer, but they
were not examined by either party, the trade being
closed by the delivery of the deeds and abstracts to
the respective properties at the same time. Prior to
the execution of the deed, Mr. Fagan had visited the
property, saw some evidence that people had driven
across a portion of it at some time more or less re-
mote, but the ground was grown up to grass, and there
was no particular evidence visible of a right of way
in actual or recent use. The real estate broker who
negotiated the trade acted for both parties thereto, and
he advised Mr. Fagan that there had been an easement
over that portion of the property described by the last
italicized portion of the description quoted, but that
this easement had expired or had been abandoned; and
there was evidence that Mr. White told Mr. Fagan
substantially the same thing, and Mr. Fagan was ad-
vised that, upon acquiring title, he would have a right
to enclose and fence up the entire property. After
receiving the deed and taking possession, Mr. Fagan
erected a fence which shortly thereafter was torn
down, and notices were posted advising him that there
was an easement for a right of way over the sixteen
foot strip described as hereinbefore indicated, and re-
ferring to the volume and page of the records of King
county where the deed reserving the easement was
recorded.

Appellants contend that respondents did not have an
indefeasible estate in fee simple, and that the prop-
erty was not free from all incumbrances, and that by
reason of the covenants in the deed, as provided by
statute, the grantors were bound to deliver an inde-

feasible title in fee simple; that the easement was a breach by reason of which appellants are damaged to the extent of $500.

It is conceded by respondents that an easement is an incumbrance, and the existence of such easement ordinarily constitutes such a breach of the covenants of a warranty deed as to entitle the grantee therein to maintain an action; but it is contended that the ambiguity and uncertainty of the final clause in the description quoted, together with the circumstances surrounding the transaction, were sufficient to put the grantees on notice of the former deeds in the chain of title shown in the abstract furnished them, which former deeds, they contend, explain and correct the ambiguity and uncertainty and make clear the intention of the grantors to except the easement from the warranty. It seems to be settled, however, that ordinarily, knowledge on the part of a grantee at the time of the existence of an incumbrance upon the land, or a defect in the grantor's title, does not militate against the covenants in the deed, as such covenants warrant against known as well as unknown defects and incumbrances, and a grantee with knowledge of an incumbrance may rely upon the covenants in the deed for his protection. *West Coast M. & I. Co. v. West Coast Imp. Co.,* 25 Wash. 627, 66 Pac. 97, 62 L. R. A. 763; *Williams v. Hewitt,* 57 Wash. 62, 106 Pac. 496, 135 Am. St. 971; *McDonald v. Ward,* 99 Wash. 354, 169 Pac. 851, L. R. A. 1918 F 662. And indeed the weight of authority seems to be to the effect that,

"It is a well-settled rule that knowledge by the grantee at the time of the conveyance, of the existence of an incumbrance on the land, or a defect in the grantor's title, does not control the force and effect of the express covenants in the deed or affect the question of breach." 8 Am. & Eng. Ency. Law (2d ed.) 86.

The trial court seems to have taken the view that the last clause of the description was meaningless in itself, and that it was appellant's duty to have submitted the deed and abstract to an attorney for examination, and that if this had been done the incumbrance would have been discovered, and the difficulty avoided; but in view of the authorities just referred to, we think this is immaterial, and beside the question. There was no mutual mistake involved. Mr. Fagan testified that he did not know of the existence of the easement, but even though he did, he was told that it cut no figure, and that it had expired, and since he did not agree to accept the title subject to the easement, he had a right to rely upon the covenants in the deed to protect him therefrom, unless the language used in the description can be construed as excepting the easement from the warranty.

It will be observed, that the last sentence of the description quoted from the deed, while complete in itself, is absolutely meaningless.

"All that portion of the above described property lying south of a line running from a point which lies north 1 degree 8″ west 16 feet from the true point of beginning to a point east 270 feet."

This is obviously a re-description of a portion of the property already described, which, as it stands, is mere surplusage, and unless it can be construed so as to add thereto words which will make that portion of the property subject to the easement for right of way purposes, then it must be held to be of no effect. In discussing latent and patent ambiguities in 17 Cyc. 675, it is said:

"It was laid down as the rule by Lord Bacon that a latent ambiguity may be explained by extrinsic evidence, but that a patent ambiguity may not; and this has been very generally accepted by the courts as cor-

rect. But this general distinction has also been criticized, and it is necessary to examine into the statement closely in order to see what it really means and how far it is a correct exposition of the law. . . .

"A latent ambiguity arises when the writing upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain. And it is so well established as to be beyond all possible dispute that parol or other extrinsic evidence is always admissible to explain a latent ambiguity in any written instrument. The reason given for the rule is that, as the ambiguity is raised by extrinsic evidence, the same kind of evidence must be admitted to remove it.

"(B) Limitations of Rule. It is to be observed, however, that while parol evidence may be admitted in explanation where there is a latent ambiguity, it can do no more than explain the doubtful expressions of the instrument consistently with the relations of the parties and the other incidents of the contract. The rule that where an ambiguity is created by parol it may be removed by parol was never intended to violate the rule that a writing shall not be contradicted or explained by inferior testimony. If therefore when an ambiguity is created by parol the instrument itself removes the ambiguity it cannot be controlled. . . .

"What is usually termed a patent ambiguity is such as exists or appears on the face of the writing itself. That portion of Lord Bacon's rule in which he states that an ambiguity of this character cannot be explained by parol has frequently been repeated by the courts as a correct exposition of the law; but it has also been subjected to much criticism. Thus it has been said that it is too general, and not of universal application, at least where the word 'ambiguity' is taken in its broad sense of doubtfulness, uncertainty, or double meaning. It is certainly not true that an ambiguity appearing on the face of the paper, if that alone be looked to, cannot be explained by parol, and the rule laid down by Lord Bacon that extrinsic evidence is not admissible to explain a patent ambiguity has never been acted

upon in its widest extent, for there are to be found in the reports may cases where, although the ambiguity was such as should undoubtedly be designated as patent, if that term be taken in its broad sense, the courts have admitted evidence to explain it or to show the circumstances surrounding the transaction and the situation of the parties. In addition to this there may be cases flatly repudiating this part of the rule and expressly holding that a patent as well as a latent ambiguity may be explained by extrinsic evidence. . . .

"The true rule with regard to patent ambiguities must be taken to be this: The patent ambiguity which cannot be explained by parol evidence is that which remains uncertain after the court has received evidence of the surrounding circumstances and collateral facts which are of such a nature as to throw light upon the intention of the parties. In other words and more generally speaking if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty and the instrument is so far inoperative and void; and it cannot be sustained or rendered operative by the introduction of evidence which would necessarily have the effect of adding new terms to the writing."

With this rule as thus stated, we are in full accord, and applying it to the facts in the case at bar, it becomes at once apparent that, if the language quoted be anything more than mere surplusage and can be considered ambiguous at all, then this ambiguity is of that character referred to in the text last above quoted, where the court, after placing itself in the situation in which the parties stood at the time the deed was executed, and with full understanding of the force and import of the words used, cannot definitely determine the

meaning and intention of the parties from the language of the instrument thus illustrated.

To apply the rule still more directly, appellant's testimony is to the effect that the broker who negotiated the transfer told him that there had been an easement, but that it had expired; that respondent White told him that there had been an easement, but that it now cut no figure, and had expired, and that he was free to fence up the property and disregard the matter entirely. Under these circumstances and with these facts before it, how can the court determine that it was the intention of the respondents that anything should be added to the sentence quoted, or, if they did intend that something should be added, what that addition should be? In view of the testimony to the effect that there had been an easement and that it had expired, would it not be as logical for the court to determine that the parties intended to add words stating that the easement theretofore existing had expired, as that they intended to add the words to the effect that the grantee should accept the title to that portion of the property subject to the easement? There is no doubt here as to the true sense and meaning of the words employed, because the words employed are absolutely meaningless, and being meaningless, to attempt to give them a meaning by extrinsic evidence would be to violate the true rule as we see it, and to lay down a rule so broad as to permit the alteration of the terms of any written instrument by parol evidence in the absence of convincing proof of mutual mistake; a doctrine which would be vicious in its results and which cannot be recognized.

We are of the opinion, therefore, that the court erred in sustaining the motion for nonsuit on the first cause of action.

The second cause of action is based upon that portion of the description giving the second and third calls, namely,

"Thence northerly along said meander line 90.7 feet north; thence west along the north boundary of land sold and conveyed by William D. Simpson and Annie Simpson, his wife, to Isabelle Gibb on January 4, 1889, and recorded in Volume 62 of Deeds, page 300, to a point which bears north 1 degree 8″ west of the true point of beginning;"

Appellants allege, and offer evidence to prove, that they were denied possession of, and excluded from, a rectangular tract of land along the entire north side of the property from east to west varying in width from 14.78 feet on the west line to 22.54 feet on the east line, which was held and claimed by the owner of the tract adjoining on the north, and enclosed by the fence of such owner, and claim damages in the sum of $1,500 by reason thereof. Appellants concede the existence of the rule that monuments control calls for courses and distances. They also appear to concede that the call for the boundary of an adjoining tract, or the boundary as contained in another deed, is, in fact, a monument, but deny the application of such rule to this case, for the reason, as they claim, that the calls, "thence west along the north boundary of the land conveyed by William D. Simpson" etc., is not locative of the north boundary; that the word "along" does not mean "to," or "up to," or "co-extensive with," and that the language of the deed, "thence northerly along said meander line 90.7 feet north" fixes a definite point which is controlling notwithstanding the reference to the boundary fixed by the Simpson deed. But we cannot think these contentions well founded. A reading of the description contained in the deed fairly and clearly fixes the north boundary of the tract conveyed as the north

boundary of the land sold and conveyed by William D.
Simpson, and the Simpson boundary thus becomes a
monument which controls the distance, and the dis-
tance 90.7 feet must give way to such monument. Au-
thorities are numerous which hold that, where the call
for a boundary in another deed or for the boundary of
another tract is expressed as, "by such a line," or "by
the north line of such a tract," the line or boundary
referred to is locative and fixes the boundary definitely,
and is a monument. *Cunningham v. Curtis,* 57 N. H.
157; *Jackson v. Hathaway,* 15 Johns. (N. Y.) 447, 8
Am. Dec. 263; *Howard v. Ingersoll,* 13 How. (U. S.)
381; *Church v. Meeker,* 34 Conn. 421. As further il-
lustrating this point, see also: *Yarrow Land Co. v.
Ross,* 79 Wash. 101, 139 Pac. 876; *Greer v. Squire,* 9
Wash. 359, 37 Pac. 545; *Davies v. Wickstrom,* 56 Wash.
154, 105 Pac. 454, 134 Am. St. 1110; *Campbell v. Seat-
tle,* 59 Wash. 612, 110 Pac. 546; *Thayer v. Spokane
County,* 36 Wash. 63, 78 Pac. 200; *Inmon v. Pearson,*
47 Wash. 402, 92 Pac. 279; *Olson v. Seattle,* 30 Wash.
687, 71 Pac. 201.

The north boundary of the land sold and conveyed by
William D. Simpson was, as fairly appears from the
testimony, marked by a fence which had been standing
for many years and which was accepted by the abut-
ting property owners and the residents of the vicinity
generally as marking the north line of the Gibb or
Simpson tract referred to in the deed to appellants;
the photographs offered show that the fence was a sub-
stantial one, in a fair state of preservation and repair;
and the evidence indicates that it marked, substantial-
ly, the true boundary and gave notice to appellants at
and before the time of the transfer from which they
could readily have determined the exact area of the
tract which they considered purchasing.

We conclude, therefore, that the granting of the nonsuit to the second cause of action was not error.

The judgment will be reversed as to the first cause of action and affirmed as to the second cause of action, and the cause remanded for further proceedings not inconsistent herewith.

PARKER, C. J., MAIN, and MOUNT, JJ., concur.