BEN C. CAMP, *Appellant,* v. D. H. CAREY *et al.,*
*Respondents.*[1]

W. C. *Losey,* for appellant.

F. *Leo Grinstead* and L. B. *Donley,* for respondents.

BEALS, J.—Prior to August, 1915, respondents, who were copartners engaged in the practice of law, rendered professional services for one John Marchand, an Indian, and had received, as their compensation, his two promissory notes, one for $500 and the other for $600, each bearing interest at ten per cent per annum. Marchand, being the owner of an unpatented allotment, had made application to the appropriate bureau of the department of the interior for permission to sell the same. Leave was granted, and advertisement published calling for bids. Plaintiff own-

[1]Reported in 278 Pac. 183.

ing land adjoining the Marchand allotment, defendants suggested to him that he make an offer for the land to be sold. Meantime, John Marchand died, leaving no property other than his allotment, and defendants made claim against the Marchand estate for the amount due on the promissory notes. Defendants offered to sell to plaintiff the two notes for the sum of $1,000, and on August 9, 1915, plaintiff wrote defendants a letter, as follows, referring to the subject of their previous conversation.

"Kettle Falls, Aug. 9, 1915.

"W. Lon Johnson,

"Colville, Wash.,

"Dear Sir: I think we can arrange the deal you proposed, $1,250 or $1,300 is a good price for the allotment, but it is worth more to me perhaps than to anyone else.

"Now I understand you will sell the Marchand notes for $1,000 and make good 80% of any cut on principal or interest that the Indian Agent or Department might make.

"That you will take some cash *soon* and the rest in about 9 months and to draw 8% interest.

"And suppose my bid is rejected and your claim cut down, What then?

"And would the ¼ part of the $1,500 to be paid to Agent in cash on acceptance of bid be paid to you, then? And would it be returned to me by you in case it was paid to you by Agent instead of being credited on my note to you which has not yet matured?

"Of course if we make any arrangement you are to be honor bound not to encourage other bidding.

"Yours truly,

"Ben C. Camp."

A few days later, plaintiff visited defendants' office, and the following agreement was entered into between the parties:

"IT IS HEREBY AGREED by and between Ben C. Camp of Kettle Falls, Washington, party of the first part,

and Carey & Johnson, of Colville, Washington, parties of the second part, that

"WHEREAS, the party of the first part has this day bought from Carey & Johnson, parties of the second part, two promissory notes in the sum of $1,100, together with interest accrued thereon, given by John Marchand, deceased, to the said parties of the second part, for services rendered and

"WHEREAS, the said party of the first part has paid to the said parties of the second part, the sum of One Thousand Dollars ($1,000) as follows, to wit: Five Hundred Dollars ($500), cash, and five hundred dollars, evidenced by a promissory note due within the expiration of nine months, with interest thereon at the rate of eight per cent per annum, and

"WHEREAS, the said party of the first part is desirous of buying that certain Indian allotment known as 'allotment H-392,' and said party of the first part being also desirous of having said second parties transact said business for said first party, and said first party to furnish to said second parties all of the moneys by which said purchase will be made, and

"WHEREAS, said second parties do hereby agree that in the event the said first party's bid is accepted, said second parties do hereby agree to convey any interest that they may have in and to said allotment by reason of said allotment having been purchased in their name, to said first party at any time that said first party may so demand, and

"WHEREAS, it is mutually agreed by and between the parties hereto that the said parties of the second part are acting as agents for the benefit of and on behalf of the said party of the first part, and without said second parties incurring any liability whatever thereof by reason of said agency, and

"IT IS FURTHER AGREED to by and between the parties hereto, that in the event the Indian Department should discount the claim or notes of the said parties of the second part as to principal or interest, then there shall be deducted from the purchase price as paid by said first party to said second parties, *pro rata,* 80% of the amount so discounted by the Indian Department or as

One Thousand Dollars ($1,000), the purchase price, bears to One Thousand, Two Hundred and Fifty Dollars ($1,250), the amount of said notes with the said accrued interest.

"It is Further Agreed to by and between the parties hereto, that the notes which are now transferred to the said party of the first part, together with a copy of this agreement, shall remain in escrow in the bank of Colville Loan & Trust Company, Colville, Washington.

"In Witness Whereof, we have hereunto set our hands and seals this 16th day of August, 1915.

"Ben C. Camp,
"Party of the first part,
"Carey & Johnson
"By W. Lon Johnson,
"Parties of the second part."

The officers of the department of the interior having charge of Indian affairs had, under the law, the right to allow defendants' claim against the Marchand estate in full or to reduce it to any lesser amount, or to disallow it entirely. It was evidently anticipated by all the parties that the department would allow the notes and interest thereon in full, and that the same would soon be paid. The department permitted the sale to proceed, and in due time the land was sold, bid in by defendants pursuant to their agreement with plaintiff, and a patent issued to them. The matter of the allowance of the claim against the estate, however, dragged on, and was not finally disposed of by the department until December 9, 1921, when the claim, principal and accrued interest, was allowed in the sum of $887.50. The allotment was sold for the sum of $1,576, which money was advanced by plaintiff pursuant to the agreement above set forth. December 22, 1921, defendants advised plaintiff that they had received from the government a check for the amount in which their claim against the Marchand estate had

been allowed, and requested plaintiff to call and adjust the matter. In response to this letter, plaintiff wrote to defendants a letter stating his claims, which reads as follows:

"Kettle Falls, Wn., Dec. 28, 1921.
"Senator W. Lon Johnson,
  "Colville, Wn.,
"Dear Sir: Your favor duly received informing me that the Indian office had remitted you $887.50 on the Marchand notes-claim.

"No change of terms is needed as between us. Payment is all that is now required, and the sending of my deed. *Our* settlement was outlined in the contract. That's why we made it.

"You owe me the deed, what money the department has paid you, and 80% of what they discounted.

"You suggested Jan. 1, 1922 as the date of payment. The amount of the notes from their dates to Jan. 1, '22 is $1,948.14. $1,948.14 less $887.50 is $1,060.64, Discount. 80% of $1,060.64 is $848.51, Guaranteed by you. $848.51 plus $887.50 is $1,736.01 due me —and the deed. Also if the department pays more, 20% of that.                      Yours truly,
                                  "Ben C. Camp."

A few days later, defendants deposited in escrow in a bank in Colville a quitclaim deed conveying the land to plaintiff, together with the sum of $1,177.50, being the amount due the plaintiff from defendants according to defendants' contention. Plaintiff refused to accept the deed and money, and no delivery thereof has ever been made, the same having been tendered into court to abide the result of this action.

Plaintiff, in his first cause of action, alleged in proper form the facts which he contended justified the entry of judgment in his favor for an amount greater than defendants admitted was due him, and pleaded a second cause of action in which he sought damages for the loss of an alleged advantageous sale of the land

which he could not make by reason of the fact that the title thereto was not vested in him. He claimed a subsequent depreciation in the value of the land to his considerable damage. Defendants answered with denials and a statement of their theory of the facts. The trial of the issues to the court resulted in the entry of findings of fact and conclusions of law in favor of defendants, pursuant to which a judgment of dismissal was entered, from which judgment plaintiff appeals.

Appellant excepted to the finding of fact to the effect that the contract between the parties was ambiguous and uncertain, and contends that the contrary was the case, and that the finding is therefore erroneous.

Appellant contends that respondents are liable to him for eighty per cent of the total amount in which the department reduced respondents' claim against the Marchand estate, while respondents claim that their contract was only to reimburse appellant up to eighty per cent of $1,250, the principal of the notes, together with accrued interest up to the date of the contract, the difference between the parties arising over the interest which accrued between the date of the contract and the allowance and payment of the claim by the department in a reduced amount.

In the next to the last paragraph of the contract between the parties, above quoted (which was written on the typewriter), the word "pro rata" is lined out, and the words which follow, "80% of the amount so discounted by the Indian department or," are written in by hand. Concerning this interlineation, appellant testified that the words written in with pen and ink were added by respondent Johnson at appellant's suggestion after he had read the contract as prepared by the respondents. Mr. Johnson prepared

the contract, and signed the same on behalf of respondents.

It is, of course, the general rule that, if the meaning of a written contract is uncertain or ambiguous, it should be interpreted against the party who prepared it. *Puget Sound International R.' v. Everett,* 103 Wash. 495, 175 Pac. 40; *Mikusch v. Beeman,* 110 Wash. 658, 188 Pac. 780.

It is elementary that the intention of the parties to a contract must be determined, if possible, from the words which they have used, and that their language must control in the absence of some ambiguity or uncertainty requiring judicial interpretation.

Respondents contend, and the trial court adopted their theory, that the contract was ambiguous, and permitted the introduction of testimony concerning the negotiations of the parties prior to the making of the formal agreement between them. Bearing in mind the principles of law governing the construction of such contracts as that with which we are here concerned, we are unable to agree with the finding of the trial court to the effect that the contract is ambiguous or uncertain. Respondents owned the two Marchand notes, aggregating $1,100, upon which had accrued, as they figured, interest in the sum of $150. Respondents made their claim on these notes against the Marchand estate, and argue that they sold to appellant, not notes, but a claim, and that consequently their guaranty is limited to the eighty per cent of the principal of the notes and of the $150 interest accrued at the date of the contract. We are unable to follow respondents in their argument that there was any distinction between selling appellant notes or a claim. The notes bore interest, and a claim based on the notes would also bear interest. The paragraph referring to the matter provides,

". . . that, in the event the Indian department should discount the claim or notes of the said parties of the second part as to principal or interest,"

then respondents' guaranty shall be operative. If it was the intention of the parties that respondents' guaranty should be limited to eighty per cent of the principal and the amount of interest due at the date of the contract, and should not extend to any future interest to accrue thereafter, it would seem that apt words setting forth such an important portion of the agreement would have been included therein. We are unable to find such an idea expressed in the contract.

Respondents contend that, in the second paragraph of the contract, mention is made of the accrued interest on the notes as being assigned to appellant, and that this fact tends to limit respondents' guaranty. While it is probably true that, in the absence of some agreement to the contrary, interest accrued on the notes would have followed an assignment of the notes, we are unable to hold that the mention of the accrued interest limits respondents' later guaranty.

Respondents also earnestly contend that the last portion of the paragraph containing the guaranty,

". . . or as One Thousand Dollars ($1,000), the purchase, bears to One Thousand, Two Hundred and Fifty Dollars ($1,250), the amount of said notes with the said accrued interest,"

indicates that the construction which they place upon the contract is correct.

In our opinion, no contradiction in terms exists between the words written in by Mr. Johnson with pen and the remainder of the paragraph as typed. We hold that the contract between the parties is not ambiguous or uncertain, and that under it respondents are liable to appellant for eighty per cent of the principal and interest of the Marchand notes discounted

488

or deducted therefrom by the officers of the government.

As to appellant's second cause of action, in which he seeks damages, the judgment of the trial court was correct; no recovery will be allowed upon this claim.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

MITCHELL, C. J., MILLARD, and TOLMAN, JJ., concur.

[No. 21916. Department One. June 6, 1929.]