[No. 38319. Department One. June 23, 1966.]

RAY SCHAUERMAN, *Respondent*, v. ARNOLD HAAG *et al.*, *Appellants.**

*Peterson, Taylor & Day*, by *Stanley D. Taylor*, for appellants.

*Horton & Wilkins*, by *Hugh B. Horton*, for respondent.

*Reported in 416 P.2d 88.

HALE, J.—Glaziers should glaze and lawyers should scriven, and neither ought do the other; for, when glaziers write and lawyers glaze, they are apt to make porous contracts and drafty windows. We are concerned in this action not with lawyers working and fitting glass, but with glaziers who twice got together and rewrote parts of a professionally drawn contract. Failing to bring to their legal draftsmanship the same precision they had learned in mastering the glazier's art, the parties effected a new contract more vague than effectual, less certain than enforceable.

Plaintiff Schauerman owned and operated the Kennewick Glass Company. He had wide experience and training in handling, fitting, selling, delivering and installing glass in all kinds of structures and vehicles, including residential and commercial buildings, boats and automobiles. Arnold Haag and Leslie Weige, partners in the Harding Glass Company, also experienced in the glass business, purchased the Kennewick Glass Company from Schauerman June 1, 1963, for the sum of $11,000. In the contract of purchase prepared by an attorney, they agreed to employ Schauerman as their salesman at a salary based on 10 per cent of the gross profits from their combined glass businesses, not to exceed $12,000 annually, but with an additional 10 per cent on the total gross profits should they exceed $300,000. The three individuals each signed duplicate originals of the purchase agreement.

Schauerman, as seller, contracted in paragraph 7 of the contract:

> In consideration of the promises and covenants herein contained the Seller hereby covenants and agrees that he will not directly or indirectly engage in the wholesaling or retailing of glass products and its connected aspects for a period of five (5) years from and after the date of cessation of his employment with the Purchasers within an area of one hundred (100) miles from the City of Kennewick Benton County, Washington.

The contract, in paragraph 6, protected the seller from being unjustifiably fired from his new job as follows:

In the event that the Purchasers should for any reason whatsoever, cease to employ the Seller during the first five (5) years from the effective date of this agreement for any cause whatsoever, that they will forthwith pay to the Seller the sum of Seven Thousand ($7,000) Dollars as severance pay, provided only that such cessation of employment be not caused by the acts of the Seller, or his death.

Some time following the execution of this formal contract after a series of discussions, the parties decided to change the agreement. One of them wrote the following undated provision in ink on the reverse side of a duplicate original copy of the contract:

Purchaser will assume payments
on 1962 Ford P U

Perc [lined through] Seller will maintain possesion off 1961 cad & 1955 olds, Also seller may ferfiet contract [lined through] Parigraph 7—with the exception that he will have to pay $2,000^{00}$ to perchasir, seller will draw $200,00 per week minimum wages

|  | | Aproved by |
| --- | --- | --- |
| Harding Glass | X | Arnold Haag |
| Kennewick Glass | X | J. R. Schauerman |

Both Haag and Schauerman affixed their signatures thereto. Then, at a later time, all three parties signed a different but somewhat similar provision typed on to the reverse side of another duplicate original, again undated, as follows:

As further consideration of this agreement,

Purchasers agree to assume payments on 1962 Ford Pickup

Seller will keep possession and ownership of the 1961 Cadillac and 1955 Oldsmobile.

If cessation of employment is caused by the acts of Seller, he may ignore and not be bound by paragraph Seven (VII) of this agreement on condition of payment to Purchasers the sum of Two Thousand Dollars ($2000.00)

In addition to the provisions of paragraph Five (V), Purchasers agree that Seller will receive and draw a

minimum per week the sum of Two Hundred Dollars ($200.00) as wages.

Approved

Leslie Weige

Arnold Haag
_____

Purchasers

J. R. Schauerman
_____

Seller

July 1, 1963, Schauerman went to work for defendants as a salesman at a $200 weekly salary, seeking out jobs and projects for his new employers and making estimates for installing glass. Within a few months, defendants also had him doing glazing work in the shop as a part-time journeyman glazier. In the fall of 1963, defendants sent Schauerman to Pendleton, Oregon, a town some 100 miles from Kennewick, to inaugurate and manage a branch business for them. He stayed there 3 months setting up a new glass business, but was injured while installing a window when the scaffolding on which he was working broke.

He then returned to the Kennewick area and resumed his duties for defendants both as a salesman and part-time journeyman glazier. From time to time he requested, and later demanded, reports on defendants' gross business and a chance to examine their books of account, but received neither the reports nor the opportunity. August 31, 1964, they fired him, asserting that he had breached his contract while working for them by treating and negotiating with others, including some of defendants' key employees, to set up a rival glass business in Kennewick, and also by drinking on the job. They accused him of miscalculating some measurements, requiring them at great cost to redo the work.

Plaintiff brought action to recover the $7,000 denominated as severance pay in paragraph 6 of the purchase contract, *supra*, a provision which fixed that sum as damages if his employment with defendants should, for any cause whatsoever, cease, "provided only that such cessation of employment be not caused by the acts of the Seller."

Defendants met this claim by asserting that plaintiff had given them good and sufficient cause for discharge. The trial court, on findings of fact supported by substantial but conflicting evidence, decided that defendants had discharged plaintiff without sufficient legal cause, that his conduct in the performance of his job as salesman and glazier did not warrant firing him, and that, under paragraph 6 of the agreement, defendants owed him $7,000. From this sum, the court set off the sum of $2,000 referred to in each of the written amendments prepared and executed by the parties and thereon granted plaintiff judgment in the amount of $5,000.

The learned trial judge, confronted with two different examples of the glaziers' art in drafting of formal amendments to a contract of purchase, declared that "there is a discrepancy between the hand-written addendum to the original agreement" and the typed amendment and concluded that the two were ambiguous.

From proof of the circumstances attending the execution of these amendments to the contract, the court ascertained them to mean that, if plaintiff wished to remain in business competition in the Kennewick area, he should pay defendants $2,000. Accordingly, when the court found that plaintiff had indicated an intention to enter a competitive business, the $2,000 constituted an appropriate offset to the amount to be awarded plaintiff for his wrongful discharge.

We are not concerned with defendants' claim for an injunction to prohibit plaintiff from engaging in the wholesaling or retailing of glass products, for that issue is not raised on appeal. This appeal concerns solely questions affecting the defendants' discharge of plaintiff from his job, whether he deserved to be fired, and what the parties intended by their contracts.

■ Thus, from conflicting but substantial evidence, the trial court found that plaintiff's conduct had not justified his discharge. These findings, supported as they were by substantial evidence, made up the facts of the case on review. *Industrial Electric-Seattle, Inc. v. Bosko,* 67 Wn.2d 783, 410 P.2d 10 (1966); *West Coast Airlines, Inc.*

*v. Miner's Aircraft & Engine Serv., Inc.,* 66 Wn.2d 513, 403 P.2d 833 (1965); *Bignold v. King Cy.,* 65 Wn.2d 817, 399 P.2d 611 (1965).

On the other main point, *i.e.,* the intent of the parties as expressed in their agreements, the trial court correctly applied the relevant basic principles governing interpretation of contracts.

■ Where the terms of a contract are plain and unambiguous, the intention of the parties shall be ascertained from the language employed. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.,* 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954); *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.,* 13 Wn.2d 370, 125 P.2d 668 (1942); *Thomle v. Soundview Pulp Co.,* 181 Wash. 1, 42 P.2d 19 (1935); *Camp v. Carey,* 152 Wash. 480, 278 Pac. 183 (1929). Words of a contract should be given their ordinary meaning unless context or definition require otherwise. *Mead v. Anton,* 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R.2d 588 (1949); *In re Garrity's Estate,* 22 Wn.2d 391, 156 P.2d 217 (1945). Nor should mistakes in grammar, spelling or punctuation be permitted to alter, contravene or vitiate the manifest intention of the parties as gathered from the language employed. *Wick v. Western Union Life Ins. Co.,* 104 Wash. 129, 175 Pac. 953 (1918).

■ But where the language is ambiguous or susceptible of more than one meaning, the courts should search out the parties' intent by viewing the contract as a whole, including the circumstances and other related transactions surrounding the making of the contract and their conduct under it. *Henry v. Morrow,* 49 Wn.2d 270, 300 P.2d 574 (1956); *Boeing Airplane Co. v. Firemen's Fund Indem. Co., supra; Dickson v. Hausman, ante* p. 368, 413 P.2d 378 (1966). The main function of the court is to find out what the parties intended and give effect to their intentions. We are of the opinion that the learned trial judge, in noting the obvious discrepancies among the three writings and the ambiguities thereby

created, properly applied the foregoing principles. Restatement, Contracts §§ 235, 236 (1932).

Affirmed.

ROSELLINI, C. J., HILL and OTT, JJ., and BARNETT, J. Pro Tem., concur.