[No. 8941-0-III.   Division Three.   January 23, 1990.]

SACKMAN ORCHARDS, ET AL, *Respondents,* v. MOUNTAIN VIEW ORCHARDS, ET AL, *Appellants.*

THOMPSON, J., dissents by separate opinion.

*Steven M. Clem* and *Clem, Nelson & Zanol,* for appellants.

*Robert Baronsky* and *Beresford, Booth, Baronsky & Trompeter,* for respondents.

MUNSON, C.J.—The omission of a semicolon[1] has fomented confusion from clarity. The focal issue is whether

---

[1] A semicolon is used to join two or more clauses, which are grammatically complete, to form a single compound sentence. W. Strunk & E.B. White, *The Elements of Style* 5, 6 (3d rev. ed. 1979). A "serial" comma is used after each term, except the last, in a series of three or more terms with a single conjunction, *e.g.,* French, German, Italian and Spanish. W. Strunk & E.B. White, at 2. Some grammarians instruct that a comma is used in a series immediately before the

it was intentionally omitted or is an isolated grammatical/typographical faux pas. The omission has allowed creative lawyers to obscure the clear intentions of the parties.

Mountain View Orchards appeals a judgment awarding Sackman Orchards damages of $55,799, including attorney fees and interest, for breach of warranty against encumbrances which Mountain View made in connection with the sale of an apple crop. We reverse.

On December 15, 1982, Sackman purchased an orchard from Mountain View along with the 1982 fruit crop which was then in controlled atmosphere storage at Welch Apples, Inc. The real estate contract provided:

> PROPERTY SOLD: On the terms and subject to the conditions set forth in this Real Estate Contract, Seller agrees to sell to Buyer *and Buyer agrees to purchase from Seller the equipment stated in Schedule 1 attached hereto and incorporated herein; the 1982 fruit crop[;] and the following legally described real property* in Douglas County, Washington, with title free of encumbrances and defects, except as set forth on and subject to Schedule 2 attached:

(Italics ours.)

On March 25, 1985, Sackman brought this action against Mountain View for the storage and bin rental costs which Welch charged as the bins were delivered and later deducted from the sale of the apples. Sackman characterized the costs as an encumbrance because they were in existence at the time it purchased the crop from Mountain View.

■ The construction of a contract relies heavily on the parties' intent, which is determined by examining the entire agreement, its subject matter and objectives, the facts surrounding its creation, the subsequent acts of the parties, and the reasonableness of the parties' interpretations. *Leija v. Materne Bros., Inc.*, 34 Wn. App. 825, 829, 664 P.2d 527

---

single conjunction to avoid ambiguity or for stylistic uniformity, *e.g.*, French, German, Italian, and Spanish. H.W. Fowler, *A Dictionary of Modern English Usage* 588 (2d ed. 1965).

(1983) (citing *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973)). Mistakes in grammar, spelling, or punctuation should not be permitted to alter, contravene, or vitiate the manifest intention of the parties as gathered from the language employed. *Schauerman v. Haag,* 68 Wn.2d 868, 873, 416 P.2d 88 (1966) (citing *Wick v. Western Union Life Ins. Co.,* 104 Wash. 129, 175 P. 953 (1918)).

Had the series, *i.e.,* equipment; crop and real property, been separated by a semicolon after crop—or a comma used after equipment and again after crop—there would be no ambiguity. The omission of either resulted in filing this action, this appeal, and the differences in interpretation.

■ Examination of the entire contract supports Mountain View's position that the general warranty against encumbrance applies solely to the real estate. Immediately following the above cited paragraph in the real estate contract are legal descriptions of three separate parcels of land. These descriptions contain no reference to the crops. Attached to the real estate contract is Schedule 1, which contains a list of equipment transferred through the agreement and lists the encumbrances on that equipment. Thereafter, Schedule 2 lists the encumbrances or defects of title as to the three parcels of land. No schedule exists for the fruit crop, nor liens or storage charges thereon. The language of the contract as a whole, in conjunction with Sackman's representative's candid admission that it understood as the buyer it would be responsible for its storage fees after closing, supports the intent of the parties to limit the warranty against encumbrances to the real property. As noted in *Suess v. Heale,* 68 Wn.2d 962, 966, 416 P.2d 458 (1966): "Necessary implications are as much a part of an agreement as though the implied terms were plainly expressed." Therefore, the trial court erred, and we reverse.

The award of attorney fees to Sackman, based on the alleged violation of this provision, is also reversed.

BILL OF SALE

Similarly, the bill of sale contains no express warranty as to existing encumbrances against the apples in storage. That document states in pertinent part:

> [The] owners of the said property, goods and chattels [Mountain View] . . . ha[ve] good right and full authority to sell the same, and that they [Mountain View] *will warrant and defend the sale hereby made unto* [Sackman] . . . *against all and every person or persons, whomsoever, lawfully claiming or to claim the same.*

(Italics ours.) This stock bill of sale provision requires Mountain View to defend any action brought by a third party contesting Sackman's title or ownership of the apples. No such claim is made here. When Sackman sold the apples, the warehouse released them; when the check for payment of the apples came, Welch retained a portion of the proceeds for their storage costs. This is the normal procedure. At no time has Welch or anyone else asserted title to the stored apples.

Sackman notes that Welch's storage charges constituted a lien on the stored apples under RCW 60.60.010 at the time of closing and, thus, was an encumbrance against the apples. That statute provides the lien is in effect only so long as the property remains in the warehouse's possession. Here, any lien enjoyed by Welch was extinguished upon the sale and removal of the apples, prior to this lawsuit.

Regardless, a plain reading of the bill of sale establishes the provision in question is not a general warranty against encumbrances of any nature. The record reflects both parties assumed the storage charges would be prorated, with Mountain View bearing the responsibility for charges up to the date of sale and Sackman thereafter. Sackman representatives candidly testified they assumed and expected this allocation. The dissent notes that when two parties share in a common assumption, which is false, the party with whom the risk has been allocated by agreement, custom or law must bear the loss. Here, neither document speaks to storage charges. The finding of fact bases Mountain View's responsibility for all the storage charges on the

quoted portion of the real estate contract. As noted above, this provision does not include the crop.

Apparently these parties, principally business and professional men living in the King County area, are aware of the manner in which an apple orchard is operated and apples are sold. It is undisputed both parties were aware the 1982 crop, at the date of closing, was in controlled atmosphere storage with Welch Apples, Inc. Both parties had to be aware these apples were incurring storage charges; yet, they failed to incorporate any allocation within their documents of sale. RCW 62A.1–201(25)(c) states that a person has notice of a fact, when from all the facts and circumstances at the time, he has reason to know it exists. Under these facts and these circumstances both parties were aware of the fact that storage charges were being incurred. Sackman, as is the custom, expected to pay the storage charge for the period it owned the apples. Therefore, it is inappropriate to read into these documents a provision that is not there.

The judgment and the award of attorney fees to Sackman are reversed, and the case remanded for a pro rata allocation of storage charges up to the date of closing, December 15, 1982.

GREEN, J., concurs.

THOMPSON, J. (dissenting)—I dissent. Under the real estate contract, Mountain View agreed to sell Sackman "the 1982 fruit crop and the following legally described real property in Douglas County, Washington, *with title free of encumbrances and defects* . . .". (Italics mine.) The majority rewrites the parties' contract by inserting a semicolon in a strategic manner. I believe such a reformation is justified only if the evidence clearly shows both parties intended that no warranty against encumbrances apply to the fruit crop. The record does not support such a finding.

At most, the quoted contract term is ambiguous with respect to whether the italicized warranty language refers

to the fruit crop as well as to the real property. In determining the intent of the contracting parties, the court considers the circumstances surrounding the making of the contract. *Leija v. Materne Bros., Inc.,* 34 Wn. App. 825, 829, 664 P.2d 527 (1983) (quoting *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973)). The bill of sale is a contemporaneous writing. In it, Mountain View clearly promised to defend against persons claiming the fruit crop. Based on this fact, the trial court correctly interpreted the real estate contract, holding that Mountain View had expressly warranted the fruit crop against encumbrances existing at closing.[2]

The sale documents need not mention the storage charges specifically. Under RCW 60.60.010,[3] Welch's storage charges constituted a lien on the stored goods. Nor is the express warranty defeated because Sachman generally was aware of the existence of the charges. Covenants of warranty are held to warrant against *known* as well as unknown defects and encumbrances. *Cf. Fagan v. Walters,* 115 Wash. 454, 457, 197 P. 635 (1921); *Foley v. Smith,* 14 Wn. App. 285, 292, 539 P.2d 874 (1975) (construing effect of warranty of title given under a statutory warranty deed).

The majority states that Welch, in claiming storage charges, was not claiming the fruit crop. It focuses on the fact that before this lawsuit was commenced, Welch had

---

[2]The majority bases its opposing conclusion on the fact that the warranty states it is subject to "Schedule 2" which contains a description of the realty and the encumbrances against it. The majority concludes that the warranty applies only to the realty. However, it can also be argued that the reference to Schedule 2 was to clarify that the warranty, as it applied to the real estate, did not protect against the encumbrances listed in the legal description. This clarification does not exclude the fruit crop from the scope of the warranty.

[3]RCW 60.60.010 provides:

"Every person, firm or corporation who, as a . . . storage warehouseman, . . . shall carry or store . . . personal property, shall have a lien thereon, so long as the same remains in his possession, for the charges for . . . storage . . .".

released the apples for sale and deducted its storage charges out of the sale proceeds. The majority reasons that any lien held by Welch was thereby extinguished. Conversely, it would appear the warranty against encumbrances was breached on the closing date when Mountain View made it. On the date of closing, Welch had the apples in its possession and the charges in question were due and owing. Because of the industry custom allowing a storage house to control sale proceeds, Welch was able to secure payment of its charges without making a direct claim against the fruit crop itself. I see no reason why this circumstance should work to benefit Mountain View. The charges were in existence at the time of closing and constituted an encumbrance against the apples at that time.

Finally, Mountain View is not aided by its argument that the parties assumed Welch's costs would be prorated.

> Where both parties share a common assumption about a vital existing fact upon which they based their bargain and that assumption is false, the transaction may be avoided if, because of the mistake, a quite different exchange of values occurs from the exchange of values the parties contemplated, *unless the risk is otherwise allocated by agreement,* custom or law.

(Italics mine.) J. Calamari & J. Perillo, *Contracts* § 9–26, at 379 (3d ed. 1987). *See also* Restatement (Second) of Contracts §§ 152, 154 (1981). The parties' intent as expressed in their agreement was that Mountain View would be responsible for any encumbrances existing at closing. The fact the parties may not have known that the storage and bin rental costs were incurred when Mountain View delivered the apples to Welch is immaterial. The warranty related to encumbrances in general, not to what the parties thought particular charges would be. *Cf. PUD 1 v. WPPSS,* 104 Wn.2d 353, 362, 705 P.2d 1195 (1985) (parties must be mistaken as to basic assumption of contract *and* the party seeking avoidance must not have borne the risk of the mistake).

For the foregoing reasons, I would affirm the judgment and the award of attorney fees to Sackman.

Reconsideration denied February 15, 1990.

Review denied at 114 Wn.2d 1022 (1990).