[No. 28383. Department One. January 16, 1942.]

THE CITY OF SEATTLE, *Appellant,* v. NORTHERN PACIFIC
RAILWAY COMPANY, *Respondent.*[1]

[1]Reported in 121 P. (2d) 382.

248

*A. C. Van Soelen* and *John E. Sanders,* for appellant.

*Robert S. Macfarlane, Dean H. Eastman,* and *Earl F. Requa,* for respondent.

STEINERT, J.—Plaintiff, the city of Seattle, brought suit upon a written agreement made with defendant, Northern Pacific Railway Company, and sought thereby to recover the sum of $6,117.47 alleged to be due and owing from the railway company as its proportionate share of the cost of reconstructing the approaches to two bridges located within the city. Defendant admitted that $3,290.27 was due and owing from it and tendered the conceded amount by paying it into court. Plaintiff declined to accept the tender as full payment and proceeded with its action. Upon a trial without a

jury, the court found that the total amount owing by defendant was considerably less than the amount claimed by plaintiff, though somewhat greater than that tendered by defendant. Judgment was entered in favor of the plaintiff in the sum of $3,552.69, the amount found by the court to be due, and from such judgment plaintiff has appealed.

In 1916 and 1917, the city of Seattle, hereinafter referred to as the appellant, was faced with the problem of building a number of bridges over the ship canal connecting Lake Union and Lake Washington with the tidewaters of Puget Sound. The railroad tracks of the Northern Pacific Railway Company, hereinafter designated as the respondent, ran, in certain localities, along the banks of the canal and the shores of the lakes. A dispute arose between appellant and respondent as to whether the spanning of respondent's tracks in connection with these bridges was for the purpose of separating the grade of the streets from the grade of the tracks, or was necessitated merely by reason of the elevation of the streets intended to be connected by the bridges, regardless of the existence of the railroad tracks. The question whether or not respondent would be liable, in whole or in part, for the cost of the bridge work here involved depended entirely upon the determination of that controversy. The dispute resulted in a written agreement executed by and between the parties on July 23, 1917, pursuant to a city ordinance passed by the city council on March 26, 1917, and approved by the mayor on March 28. It is upon this agreement that appellant's action is founded. The pertinent portions of the agreement read as follows:

"WHEREAS, The City of Seattle is *now engaged* in the construction of a bridge across the Salmon Bay Lake Washington Canal Waterway at each of the following named points:

"(a) The extension of Eastlake [avenue] to its intersection with Tenth Avenue Northeast;

"(b) Fremont Avenue;

"(c) Fifteenth Avenue *Northwest,* and

"WHEREAS, the bridge at point (a) crosses the railroad track of the Northern Pacific Railway Company between Ninth and Tenth Avenues Northeast, and the bridge at point (b) crosses, on the *south* bank of the canal, the Lake Union Belt Line of the Northern Pacific Railway Company, and, on the *north* bank of the canal, the main line of the Northern Pacific Railway Company, and the bridge at point (c) crosses certain tracks of the Northern Pacific Railway Company, and certain tracks owned jointly by the Northern Pacific [Railway Company] and Great Northern Railway Company on the *north* bank of the canal, and

"WHEREAS, there is a dispute between the City of Seattle and the Northern Pacific Railway Company as to whether the spanning of the tracks of the railway company hereinbefore described is for the purpose of separating the grade of the streets from the grade of the railroad tracks, or is necessitated merely by the street elevations regardless of the existence of the said railway tracks,

"Now, THEREFORE, for and in consideration of the premises, and to effect a compromise and settlement of said dispute, it is hereby AGREED by and between The City of Seattle, a municipal corporation of the first class of the State of Washington, hereinafter called 'the City', and the Northern Pacific Railway Company, a corporation organized and existing under the laws of the State of Wisconsin, and doing business in the State of Washington, hereinafter called 'the railway company', as follows:

"1. That the railway company shall bear and pay one third of the cost and expense of *constructing, reconstructing and maintaining* those portions of the *above described bridges* over *its* right of way at said points (a) and (b), and one-sixth of such cost and expense at point (c)." (Italics ours.)

It is to be understood that all the issues raised by this case are concerned with the *approaches* to the bridges,

rather than with the actual bridges themselves, since respondent's tracks pass beneath the approaches rather than under the parts of the structures more precisely termed bridges.

The bridge at Fremont avenue, point (b), and the cost of its construction or reconstruction are not involved in this action. However, for reasons which will appear later, it may be noted that the contract specifically provides that at point (b) (Fremont) the bridge crosses respondent's tracks on both the south bank and the north bank of the canal, while with reference to point (c) (Fifteenth avenue northwest) the bridge is described as crossing respondent's tracks only on the *north* bank of the canal, there being no mention of the *south* bank whatsoever.

The complaint in this proceeding comprises three causes of action. The first pertains to the bridge at point (a), which is commonly known as the University bridge. During 1916 and 1917, the appellant city constructed, or was engaged in constructing, at that point a wooden bridge thirty-nine feet, eight inches wide, with two six-foot sidewalks. No question is here involved with respect to the cost of that original construction or with respect to respondent's payment of its proportionate share of the expense thereof.

In 1931 and 1932, pursuant to appropriate city ordinances, appellant rebuilt the University bridge, or, more accurately speaking, constructed with permanent materials a new bridge, together with the necessary approaches, in place of the original structure. The new bridge and the approaches thereto, however, were constructed to a width of fifty-eight feet, with two six-foot sidewalks. Thus, the new bridge was eighteen feet, four inches wider than the original one.

The total cost of thus constructing so much of the approaches as crossed respondent's right of way at that

point was $14,078.87. In its first cause of action appellant demanded that respondent be required to pay one-third of that amount, or $4,692.96, claiming that the contract so obligated it. Respondent admitted its liability to the extent only of $3,145.63, on the theory that it was bound merely to pay its proportionate part of the cost of *reconstructing* a bridge having a width of thirty-nine feet, eight inches, rather than a bridge fifty-eight feet wide. The trial court adopted respondent's theory, but at the same time held that it should also be required to pay an additional $215.63, representing respondent's proportionate share of the cost of certain concrete work on the new bridge and of a temporary trestle made necessary by the reconstruction. Judgment was therefore entered upon the first cause of action in the sum of $3,361.26. Respondent assigns no error upon the additional allowance over and above the amount previously conceded by it.

The sole question involved in this cause of action is whether respondent should have been required to pay on the basis of a structure fifty-eight feet in width, or on the basis of one thirty-nine feet, eight inches wide. In other words, the question to be decided by the court was whether or not the building of the new and wider bridge, together with its approaches, came within the meaning of the term "reconstructing," as used in the contract between the parties. Counsel for appellant in his opening statement expressed the issue thus:

"So the question as to the first cause of action is whether or not the contract covered *reconstruction* of the bridge at its original width or at any width it might have been *reconstructed to.*" (Italics ours.)

Respondent's counsel acquiesced in that statement of the issue.

Neither side offered any evidence of any technical or peculiar meaning to be given to the word "re-

constructing," as used in the written agreement. The word must therefore be given its usual and ordinary meaning.

In Funk & Wagnall's New Standard Dictionary (1929), the word "reconstruct" is defined as meaning "To construct again; to rebuild, either in fact or idea." Webster's New International Dictionary (2d ed. 1940) defines it thus:

"To construct again; to rebuild; to remodel; to form again or anew, as in the imagination; as, to *reconstruct* a church, a regiment, or a past epoch."

And in 53 C. J. 595, the same meanings are given, supplemented by the further statement that the word means "to restore again as an entity the thing which was lost or destroyed."

In *Fuchs v. Cedar Rapids*, 158 Iowa 392, 139 N. W. 903, 44 L. R. A. (N. S.) 590, appears the following statement:

"Reconstruction presupposes the nonexistence of the thing to be reconstructed, as an entity; that the thing, before existing, has lost its entity; and 'reconstruction' is defined as follows: 'To construct again; to rebuild; to restore again as an entity the thing which was lost or destroyed'—and it is apparent that the Legislature meant by the word 'reconstruct' to rebuild (that is, to construct again the thing which, as an entity, has been lost or destroyed); . . ."

In *Bell v. Maish*, 137 Ind. 226, 36 N. E. 358, it is said:

"Reconstruction is but a form of construction, a construction again of what had first been constructed. In addition, it is very clear that reconstruction is a 'matter properly connected' with construction."

For other definitions, see 36 Words & Phrases (Perm. ed. 1940) 525 *et seq.*

From these definitions, it is clear that "reconstruction" of a thing has relation to the thing originally constructed. It logically follows, we think, that when a

party to a contract agrees to reconstruct a bridge, a building, or some similar structure at a designated point, the obligation of the contractor is limited to the rebuilding of a bridge or other structure reasonably similar in kind and proportions to the original construction, although not necessarily an exact reproduction thereof. That interpretation of the contractor's obligation is peculiarly warranted in the case at bar, for, as appears by the very wording of the contract itself, appellant was, at the time of its execution, engaged in constructing a particular character of bridge at the point now under consideration. It is therefore only reasonable to assume that the parties were contracting with reference to the construction, *reconstruction,* and maintenance of a bridge reasonably similar in character to the original structure and of approximately the same proportions. Making due allowance for the necessities requiring a new structure, it cannot rightly be said that, at the time of entering into the contract, the parties contemplated the "reconstruction" of a bridge almost half again as wide as the one originally built.

An apt illustration of the result of the application of appellant's contention to an analogous situation is suggested in respondent's brief. The Narrows bridge, in this state, was recently destroyed by a violent storm. The bridge was heavily insured. If, as is customary in contracts of insurance upon such structures, the policies covering the bridge had reserved to the insurance companies the right to "reconstruct" the bridge, instead of paying the amounts provided in the insurance contracts, would it be reasonable to think, or logical to hold, that, if the insurers should elect to exercise their option to rebuild, they would be required to "reconstruct" a bridge half again as wide as that originally built, merely because the state had decided to rebuild

a structure of greater proportions? We do not think that such a contention would be upheld.

So, here, we are of the opinion that the trial court correctly held, upon this phase of the case, that respondent was obligated only to the extent of paying what would have been its agreed share of the cost had a new bridge only thirty-nine feet, eight inches wide been constructed. The added expense incurred in building the new bridge to a width greater than that of the old one must be borne by appellant.

Appellant's second cause of action relates to the reconstruction of a hundred-foot Howe Truss span at the north end of the bridge at Fifteenth avenue northwest, commonly known as the Ballard bridge, which crosses respondent's railroad tracks as well as certain tracks owned by it jointly with the Great Northern Railway Company, in the locality designated in the contract as point (c). As has already been pointed out, the contract requires the respondent to pay one-sixth of the cost and expense of constructing, *reconstructing*, and maintaining that portion of the bridge over *its* right of way at point (c). The issue in this cause of action concerns the meaning of the phrase "its [respondent's] right of way," as used in the contract between the parties and as applied to the peculiar facts existing at the time of its execution.

The proof shows that respondent owns, at that point, a separate right of way fifteen and one-quarter feet in width, measured along the center line of the bridge, and joint rights of way with the Great Northern Railway Company, totalling forty-eight and one-quarter feet in width measured in the same manner, or a total combined right of way at this point, including both its joint and its several franchise rights, measuring sixty-three and one-half feet in width.

Appellant asked judgment for $486.18 under this

cause of action, on the basis of a *one-hundred-foot* right of way. Respondent tendered the sum of $144.64, on the basis of rights of way having a total width of twenty-nine and three-fourths feet, but later, in open court, increased the tender to the sum of $191.43, on the basis of a total width of thirty-nine and three-eighths feet. The trial court allowed appellant the amount finally tendered by respondent. The court arrived at that result by construing respondent's undivided half interest in the joint rights of way (totalling forty-eight and one-quarter feet in width) as equivalent to a separate right of way of half that width (or twenty-four and one-eighth feet) and added thereto its admittedly separate right of way fifteen and one-quarter feet wide, thus making a combined right of way, for the purpose of assessing costs under the contract, of thirty-nine and three-eighths feet. One-sixth of the cost of reconstructing the span over that computed total right of way was held properly chargeable to respondent.

▉ Appellant's first contention upon this issue is that respondent should be held to pay on a *one-hundred-foot* basis, for the reason that in November, 1917, the city billed the respondent, for the original construction, on a basis of a one-hundred-foot right of way, which charge was thereupon paid by respondent. It is argued that such payment constituted a contemporaneous construction of the contract by the parties.

We cannot agree with that contention. It is reasonably clear that the amount of that payment was an oversight or mistake on the part of both parties, or at least on the part of respondent. At any rate, the contract is specific and unambiguous to the effect that respondent was obligated to pay only on the basis of the actual width of its possessory right of way, whatever that might be determined to be, and not on the basis

of the entire length of the span regardless of the width of the right of way over which it was built.

Appellant's second contention on this issue is that, in any event, respondent is obligated to pay on the basis of the *entire total width* of the respective rights of way, joint as well as several. We cannot agree with that contention. The contract does not say that respondent shall pay the proportionate cost of that part of the span which extends over the whole series of railroad tracks, including both the separate right of way owned by respondent and the joint rights of way held by both railroads in common, but requires only that payment be made for one-sixth of the cost of that portion of the span which crosses *its* (respondent's) right of way. Respondent does not seek to escape payment of its just proportion of the cost of so much of the span as extends over the joint rights of way, but is willing to pay according to its interest therein, as well as its full share of the cost of so much of the span as crosses its separate right of way. In our opinion, the trial court's solution was a fair and just one. We see no reason why respondent should be held to pay a charge which should have been assessed against another company, and we do not think that the wording of the contract calls for any different interpretation. We therefore agree with the conclusion at which the trial court arrived upon this phase of the case.

The third cause of action relates to the reconstruction of an eighty-four-foot Skew Truss span over respondent's tracks at the *south* end of the Ballard bridge. For this item, appellant sought to recover the sum of $938.33, being one-sixth of the cost of rebuilding so much of the span as extended over respondent's railroad tracks in that locality. The trial court dis-

allowed the claim in its entirety, on the ground that it was not covered by the contract between the parties.

Reference to the contract, quoted in part above, reveals that, so far as respondent's obligation is concerned, no mention whatsoever was made therein of an obligation to share in the cost of the construction, reconstruction, or maintenance of any part of the *southern* end of the bridge. The contract described four specific points at which the original work of construction then in progress intersected or spanned the respondent's tracks: At the University bridge (extension of Eastlake avenue, designated in the contract as point (a) which is, in fact and as shown by the record, on the *north* bank of the canal); at the Fremont bridge (Fremont avenue, designated as point (b) in the contract) on both the *north* and *south* banks of the canal; and at the Ballard bridge (Fifteenth avenue *northwest*, designated as point (c) in the contract) on the *north* bank of the canal.

The reconstruction work involved in the third cause of action, although a part of the Ballard bridge, was in fact done at Fifteenth avenue *west*, and not at Fifteenth avenue *northwest*, which is the only street named in connection with the description of point (c) in the contract. The two streets become a continuous one only by reason of the bridge connection. Aside from that distinction, however, it is to be noted, as was pointed out near the beginning of this opinion, that with reference to the Fremont bridge, point (b), the contract provided specifically that the bridge crossed the railroad tracks of respondent on both the north and south banks of the canal, whereas, with reference to point (c) the contract mentioned only the *north* bank of the canal, and was completely silent as to any crossing which may have existed on the *south* bank. The contract was drawn by eminent counsel, and it is to be presumed that they drew it according

to the understanding and agreement of the parties. It also appears from the evidence that, when appellant built the approach to the south end of the original bridge in 1916 and 1917, it did not bill respondent for any contribution claimed to be due from the latter for that work. Appellant claims that this was a mere oversight or neglect, and we will so regard it, just as we have done with respect to the overpayment by respondent on the item involving the work on the *north* end of the same bridge, as hereinbefore indicated. This concession might have some material bearing upon the decision of the present issue if the action were of a kind that permitted its consideration.

This suit, however, is a straight action at law upon the contract. There is no suggestion in appellant's pleadings that there was any fraud or mistake in connection with the execution of the contract, and the instrument is plain and unambiguous upon its face. The issues are therefore limited to the contract as written.

"Where a party in his pleadings relies solely upon an alleged written contract between himself and the other party, he is bound by his pleading and cannot object to treatment of the writing as the whole contract of the parties, and hence he cannot introduce parol evidence to vary such contract." 22 C. J. 1290, Evidence, § 1718.

This rule has been followed by this court in several cases. *Staver & Walker v. Rogers*, 3 Wash. 603, 28 Pac. 906; *Tacoma Mill Co. v. Northern Pac. R. Co.*, 89 Wash. 187, 154 Pac. 173.

Appellant urges, however, that the contract should be so construed as to find therein the intent to include the work at the *south* end of the bridge, for otherwise, it is alleged, the contract is manifestly incomplete and fails to accomplish its purpose. It is, of

course, the duty of courts, when construing questioned contracts, to search out the intent of the parties, but that duty arises out of an ambiguity or omission that demands the reception of testimony to illustrate their intent or to harmonize apparent conflicts. The statement just made is taken almost verbatim from *Kanaskat Lbr. & Shingle Co. v. Cascade Timber Co.,* 80 Wash. 561, 142 Pac. 15. Other cases expressing the same rule are *Allen v. Farmers & Merchants Bank,* 76 Wash. 51, 135 Pac. 621; *Olson Land Co. v. Seattle,* 76 Wash. 142, 136 Pac. 118; *Armstrong v. Wheeler,* 86 Wash. 251, 150 Pac. 5; *Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co.,* 99 Wash. 68, 168 Pac. 1124; *Betcher v. Kunz,* 112 Wash. 563, 192 Pac. 955; *Parke v. Case,* 113 Wash. 263, 193 Pac. 688; *Robinson v. Shell Oil Co.,* 172 Wash. 611, 21 P. (2d) 246.

■ To construe the contract as appellant suggests. would require our reading into it something that not only is not there, but which also appears to have been deliberately left out. The written agreement made specific provision for contribution by respondent for work to be done in the four localities enumerated above, but not for work to be done on the *south* end of the Ballard bridge. As worded, the contract left no room for construction. In view of the terms of the contract, the trial court rightly dismissed appellant's third cause of action.

The judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.