[No. 283-3.    Division Three.    April 20, 1971.]

KITTITAS COUNTY, *Respondent,* v. CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, *Appellant.*

*J. Fred Simpson,* for appellant.

*Joseph Panattoni, Prosecuting Attorney,* for respondent.

MUNSON, C.J.—Kittitas County brought suit against Chicago, Milwaukee, St. Paul and Pacific Railroad Company (railroad) to enjoin the latter's use of three railroad-highway crossings located in Kittitas County and to recover the cost of light fixtures placed at the three crossings by the county. The trial court granted the first portion of plaintiff's prayer contingent upon the railroad's failure to install automatic warning signals at each of the three crossings prior to May 7, 1971, but dismissed with prejudice the second portion. The railroad appeals. We affirm.

The instant action by Kittitas County centers around the interpretation of an agreement entered into by plaintiff and defendant's predecessor in interest in May 1907. The portions thereof pertinent to the instant litigation state:

That said railway company, its successors and assigns, shall *lay down, build, construct, equip, maintain and operate said railroad tracks and telegraph or telephone wires, in a first class workmanlike manner,* and so as to interfere as little as possible with the travel upon said roads and highways, and in laying down and constructing

said railroad tracks they shall leave the roads and high-ways along, over and across which said railroad tracks shall pass in as good condition as they were before said tracks were built and constructed thereon. Second: Said railway company, its successors and assigns, *shall construct safe and sufficient crossings at all points where its railroad track shall cross said roads and highways, and thereafter maintain the same in good condition for public travel.* If it shall be necessary in the construction of said railroad tracks to change the grade of any road or high-way at the place of crossing the same may be done providing the grantee, its successors and assigns, shall read-just the grade of the approaches to said crossing so as to conform to the grade of said railroad tracks. The grades of approaches not to exceed 4% wherever practicable and in no event to be greater than seven per cent.

(Italics ours.)

During the 60-year period following execution of the agreement, the population density near the crossings increased. As a result, the traffic over them markedly increased. Since 1960, five accidents have occurred at the three crossings, three of them since 1968. Four individuals have been killed. Four of the five accidents occurred after dark with the motor vehicle striking the side of a train. All of the fatal accidents occurred after dark and three occurred while foggy weather conditions prevailed.

■ The railroad contends it is only bound to maintain the Kittitas County crossings as originally constructed, *i.e.,* to suit the conditions existing in 1907. *Holland v. Braun,* 139 Cal. App. 2d 626, 294 P.2d 51 (1956); *Shea v. Boston & M. R.R.,* 88 N.H. 462, 191 A. 650 (1937); *In re Morris Ave. Bridge,* 105 Misc. 659, 174 N.Y.S. 682 (1919). It further maintains the state, under RCW 81.53.261, has preempted the field of warning devices at railroad crossings from judicial consideration by placing exclusive jurisdiction for requiring the imposition of same in the utilities and transportation commission. Conseqently, the trial court's order pertaining to the warning signals at the crossings is void. We disagree. In *Holland* there was no showing the road had become dangerous or impractical for regular use; *In re Morris Ave.*

*Bridge, supra,* involved the interpretation of a statute, not applicable here; and *Shea* has been limited to its facts. *White v. Suncook Mills,* 91 N.H. 92, 13 A.2d 729 (1940).

RCW 81.53.261 provides in part:

> Nothing in this section shall be deemed to foreclose . . . compliance with an existing agreement, franchise or permit arrangement providing for the same.

Does the 1907 agreement, which does not expressly mention warning devices, contain language from which an inference may be drawn that it was the parties' intention for the railroad to provide warning devices in the future, if necessary, so as to fall within the above-quoted statutory provision? We answer in the affirmative.

■ In interpreting the agreement between the parties, it is the duty of this court to ascertain their intention from the language employed in their agreement and all reasonable inferences therefrom. *Schauerman v. Haag,* 68 Wn.2d 868, 873, 416 P.2d 88 (1966).

■ There can be no question both parties, at the time the agreement was entered into, contemplated it was to remain in existence for many years. Railroad beds and tracks, particularly the main line of a railroad, do not constitute a temporary type of construction. The world moves on and railroads can neither expect or believe they are the only ones who can remain static. As circumstances and conditions surrounding their crossings change, they must change with them. As stated in 74 C.J.S. *Railroads* § 157 at 609 (1951):

> The duty of maintaining and keeping in repair and restoring highway crossings so as not to impair their usefulness is a *continuing duty,* requiring the railroad to put the street in such condition as changes in circumstances require; and, when a crossing or mode of restoration originally sufficient becomes insufficient by reason of subsequent conditions, increased travel, character of vehicles used, and the like, it is the duty of the railroad company to do whatever the public convenience and necessity may require in order to meet such conditions, rather than what may be required by convenience of the railroad.

(Footnotes omitted. Italics ours.)[1]

· ■ The railroad by the terms of the agreement stated it would "maintain and operate said railroad tracks . . . in a first class workmanlike manner, . . . so as to interfere as little as possible with the travel upon said roads and highways . . . ". Automatic warning devices were in existence in 1907. It is reasonably inferable from the agreement the parties contemplated it might be necessary for the railroad to add such a feature as conditions and circumstances surrounding their crossings would change in ensuing years. To hold otherwise would be an unrealistic construction of the agreement; also contrary to the legal duty imposed upon defendant after a judicial determination had been made that the crossings were more than ordinarily dangerous.[2] Furthermore, in construing a public grant, such as an agreement, the court should keep the public interest as a paramount concern. *Mann v. Bakersfield,* 192 Cal. App. 2d 424, 13 Cal. Rptr. 211 (1961); *Fort Worth v. Southwest Magazine,* 358 S.W.2d 139 (Tex. 1962), *cert. denied,* 372 U.S. 914, 9 L. Ed. 2d 722, 83 S. Ct. 730 (1963). We hold warning devices to have been within the contemplation of the parties at the time of executing their agreement and within the provisions of RCW 81.53.261 relating to existing agreements.

Defendant's second assignment of error relates to an alleged insufficiency of evidence to find the crossings so dangerous as to require the installation of automatic warning

---

[1]See also *Arrasmith v. Pennsylvania R.R.,* 410 F.2d 1311 (6th Cir. 1969); *Illinois Central R.R. v. Farris,* 259 F.2d 445, 447, 67 A.L.R.2d 1358 (5th Cir. 1958); *Wilson v. Northern Pac. Ry.,* 44 Wn.2d 122, 126, 265 P.2d 815 (1954); *Hopp v. Northern Pac. Ry.,* 20 Wn.2d 439, 441, 147 P.2d 950 (1944); *Missouri Pac. R.R. v. Hare,* 108 S.W.2d 577 (Ark. 1937); *Hickey v. Kansas City S. Ry.,* 290 S.W.2d 58 (Mo. 1956); *Leisy v. Northern Pac. Ry.,* 230 Minn. 61, 40 N.W.2d 626 (1950); 4 Blashfield, Automobile Law & Prac. § 191.18 at 592 (3d ed. 1965).

[2]The case of *Seattle v. Northern Pac. Ry.,* 12 Wn.2d 247, 121 P.2d 382 (1942) relied upon by defendant is readily distinguishable from the instant case. In *Seattle* the court interpreted a contract as it related to "reconstruction" of a structure—a bridge—not in the maintenance of a highway crossing with its concomitant common law duty.

devices. There was evidence by an expert witness called by the county whose testimony was most impressive to the trial court and upon which it based its findings that the crossings were dangerous. We believe the findings of the trial court in this respect are based upon sufficient evidence to meet the standards for "dangerousness of a crossing" set forth in *Wilson v. Northern Pac. Ry., supra,* and *Hopp v. Northern Pac. Ry., supra.* Our review of the trial record has not convinced us the trial court erred in so deciding. *In re Schmitz,* 44 Wn.2d 429, 433, 268 P.2d 436 (1954).

Judgment affirmed.

GREEN and EVANS, JJ., concur.

Petition for rehearing denied June 7, 1971.

Review denied by Supreme Court August 20, 1971.