[No. 2421-1.    Division One.    January 6, 1975.]

PINE CORPORATION, *Appellant*, v. WILLIAM A. RICHARDSON
*et al., Respondents.*

*Loveridge & Leslie* and *Edward M. Holpuch, Jr.,* for
appellant.

*Cartano, Botzer & Chapman* and *John W. Chapman,* for
respondents.

SWANSON, C.J.—This appeal primarily involves the ques-
tion of whether the interpretation of an "option to termi-
nate" lease provision properly can or should be part of the

subject of an unlawful detainer action brought by the lessor pursuant to RCW 59.12.

The operative facts of this appeal are undisputed. Appellant Pine Corporation as lessor and the respondents Richardson and Stuempges as lessee are parties to the lease in question which contains the following paragraph 17:

> 17. OPTION TO TERMINATE. Lessor may effect a termination of this lease upon the expiration of the initial five years of the lease term or anytime thereafter. This may be accomplished by Lessor giving 7 months written notice to Lessee of his desire to terminate. Upon the expiration of that seven month period this lease shall be deemed automatically terminated and Lessor shall there upon pay Lessee $15,000.00 in consideration of the premature termination.
>
> 2. Lessee may terminate under the same provisions as in 17(1) relating to the Lessor's option to terminate, provided, that Lessee pay Lessor $3000.00 in consideration of the premature termination, and, at Lessor's option the lease shall not be deemed terminated until such *lease* is paid.

The parties have agreed that the word *"lease"* last appearing in paragraph 17 was intended to be either "payment" or "amount." Acting in accordance with paragraph 17, the respondents gave notice to the appellant on December 1, 1971, of their decision to exercise their right to terminate the lease. Just under 6 months later, on May 25, 1972, respondents advised the appellant that they no longer desired to terminate the lease and revoked and withdrew their notice of December 1, 1971. Appellant, however, was unwilling to accept such attempted revocation and withdrawal and advised the respondents that they should vacate the premises by June 30, 1972.

On June 13, 1972, appellant entered into a new lease of the premises with a third party at a monthly rental substantially greater than that which appellant had been receiving from the respondents. The new tenant was to take possession of the premises on July 1, 1972, but on June 30, 1972, the respondents failed to vacate but retained posses-

sion of the premises through the months of July and August 1972. As a result of respondents' failure to vacate, appellant brought suit pursuant to the unlawful detainer statute, RCW 59.12, and on October 13, 1972, obtained a judgment in the amount of $1,400 against the respondents which amount the trial judge found to be the fair rental value of the premises for the 2 months in question.

The litigation which is the subject to the present appeal was commenced by the appellant Pine Corporation on October 19, 1972, after the respondents failed to pay the appellant $3,000 in consideration of the premature termination of the lease which had been the basis of the prior unlawful detainer action. The respondents counterclaimed for $800 which represented a deposit which allegedly had not been refunded by appellant and argued by way of an affirmative defense that appellant's claim for the premature termination payment of $3,000 had been resolved by the prior unlawful detainer action and that the matter was therefore res judicata. Both parties moved for summary judgment which, on July 6, 1973, was granted in favor of the respondents Richardson and Stuempges. Pine Corporation appeals.

In considering this appeal, we are confronted with the threshold question of the effect to be given the prior unlawful detainer action in relation to the present controversy. In this connection, the respondents argue the trial court must be affirmed because (1) the appellant is barred from any claim it might have under the "option to terminate" clause of the lease here in question because of its failure to assert that claim as part of the prior unlawful detainer action; and (2) in any event, the findings of the trial court in the unlawful detainer action are binding upon the appellant as to the meaning of the "option to terminate" clause through the operation of the doctrines of res judicata and collateral estoppel. Appellant contends that the unlawful detainer action constituted utilization of the special statutory remedy provided in RCW 59.12 which was necessarily limited to issues involving the right to possess the property invol-

ved; consequently, the trial court in the prior action was without jurisdiction to rule as to the meaning of the "option to terminate" clause, except insofar as that clause relates to the right of possession, and therefore the doctrines of res judicata and collateral estoppel do not apply to resolve the instant litigation. We agree with the appellant.

RCW 59.12.030 defines unlawful detainer specifically in the context of the right of possession. Accordingly, in providing for the judgment which properly may be entered in an unlawful detainer action, RCW 59.12.170 provides in relevant part:

> If upon the trial . . . the finding of the court be in favor of the plaintiff and against the defendant, judgment shall be entered for the *restitution of the premises*; and if the proceeding be for unlawful detainer after neglect or failure to perform any condition or covenant of a lease or agreement *under which the property is held*, or after default in the payment of rent, the judgment shall also declare the forfeiture of the lease, agreement or tenancy.
> . . .

(Italics ours.) Under Washington law, the special jurisdiction conferred upon the superior court through operation of the provisions of RCW 59.12 is limited to the consideration of the issue of who has the right to possess the subject property. Any issue not incident to the right of possession within the specific terms of RCW 59.12 or not in the nature of an affirmative equitable defense must be raised in an ordinary civil action. *Tuschoff v. Westover*, 65 Wn.2d 69, 395 P.2d 630 (1964); *MacRae v. Way*, 64 Wn.2d 544, 392 P.2d 827 (1964); *Snuffin v. Mayo*, 6 Wn. App. 525, 494 P.2d 497 (1972); *Peoples Nat'l Bank v. Ostrander*, 6 Wn. App. 28, 491 P.2d 1058 (1971); *Proctor v. Forsythe*, 4 Wn. App. 238, 480 P.2d 511 (1971); *Kessler v. Nielsen*, 3 Wn. App. 120, 472 P.2d 616 (1970).

Thus, in *MacRae v. Way, supra*, where the plaintiff landlord gave up his right of possession to a third party, he could no longer sue for past due rent through an unlawful detainer action and was "relegated to the processes of an

ordinary civil action." *MacRae v. Way, supra* at 547. As our state Supreme Court stated in *MacRae* at page 546:

> Unlawful detainer actions are statutorily created summary proceedings, primarily designed for the purpose of hastening recovery of possession of real property. . . . The principal subject matter of the action is the possession of the subject property. . . . In such proceedings the superior court sits as a special statutory tribunal, limited to deciding the primary issue of right to possession together with the statutorily designated incidents thereto, *i.e.*, restitution and rent or damages. It does not sit as a court of general civil jurisdiction. . . .

(Citations omitted.) Similarly, in *Tuschoff v. Westover, supra*, where the landlord had obtained possession of the premises in question, the court refused to allow him to pursue his claim for accrued rent as part of unlawful detainer jurisdiction, stating at page 73:

> The special summons employed in an unlawful detainer action is insufficient to give the court jurisdiction of the parties in a general proceeding. The court has obtained jurisdiction over the parties only for the limited statutory purpose of determining the issue of possession.
> . . .
> The court obtained jurisdiction over the parties for a limited statutory purpose only, namely, to determine the issue of possession in an unlawful detainer action and, having obtained that limited jurisdiction, it committed error in transforming the special statutory proceeding into an ordinary lawsuit for accrued rentals. Hence, respondents' action for accrued rental is dismissed without prejudice to any other appropriate action.

(Citation omitted.)

Respondent directs us to *Sowers v. Lewis*, 49 Wn.2d 891, 307 P.2d 1064 (1957) and *Munro v. Irwin*, 163 Wash. 452, 1 P.2d 329 (1931), as authority for the proposition that a lessor may combine in an unlawful detainer action, both a claim for restoration of the premises and a claim for damages for failure of the lessee to perform a covenant of the lease; however, examination of these cases reveals that they do not support such a broad proposition inasmuch as

the covenants discussed therein clearly were not *any* covenant but covenants incident to the lessee's right of possession. *See Kessler v. Nielsen, supra.*

In short, the rule is that where the issue of possession otherwise has been resolved, collateral issues—such as the validity of a claim for accrued rentals—will not lie in an action brought pursuant to the unlawful detainer statute, RCW 59.12. Hence, in the case at bar, the jurisdictional argument of the parties is resolved by a consideration of whether appellant's claim to a $3,000 premature termination payment is a necessary incident to determining, as between the appellant and the respondents, who has the right to possess the subject property. We hold it is not.

In resolving the issue of the right to possession, the trial court in the unlawful detainer action only had to consider the "option to terminate" clause for the limited purpose of determining whether the respondents, having once given the 7-months' notice of desire to terminate, nevertheless subsequently effectively revoked such notice such that they lawfully could continue possession of the premises in accordance with the terms of the lease. The trial court found there was no such revocation in finding of fact No. 6:

> That on or about the 25th day of May, 1972, the defendants [respondents] sent to the plaintiff [appellant] a document admitted to evidence as Exhibit "4" which was claimed by the defendants to be a withdrawal and revocation of the notice of intent to terminate the Lease given under letter dated December 1, 1971; that thereafter, the plaintiff advised the defendants that the plaintiff would not accept such withdrawal and revocation and that the defendant[s] should leave the premises by June 30, 1972; that the notice Exhibit "4", letter dated May 25, 1972, was not in fact a revocation or withdrawal of the prior termination letter, but was in fact an offer to reinstate the Lease, which offer was not accepted by the defendants.

The trial court then entered further findings related to the "option to terminate" provisions of paragraph 17 of the lease in order to resolve the issue of possession, as follows:

Under the provisions of section 17 of the Lease, Exhibit "1" the plaintiff had the option, on June 30, 1972, of continuing the Lease in existence for such period of time until the sum of $3,000.00 was paid by defendants if plaintiff desired to so elect. Plaintiff did not make that election but elected and agreed to consider the Lease terminated as of June 30th. The $3,000 had not been paid.

Finding of fact No. 7.

That the Lease agreement became terminated on June 30, 1972, by the defendants' election of their contractual right to terminate the same and plaintiff's election to consider the Lease terminated at that date without payment by defendants of the said sum of $3,000.00 as set forth in finding VII above. Upon said termination, neither plaintiff nor defendants had any further rights under the Lease.

Finding of fact No. 8. Thus, the trial court determined only that the respondents had no right to possession of the subject premises after June 30, 1972, and therefore the appellant was entitled to a judgment for reasonable rental for the 2 additional months in which the respondents continued in possession of the property.

In the present controversy, neither party disputes the fact that the respondents were guilty of unlawful detainer in retaining possession of the property beyond June 30, 1972; rather, the dispute centers on the question of whether or not the respondents owe the appellant $3,000 in consideration of their exercise of the premature termination provisions of paragraph 17 of the lease. Therefore, it is readily apparent that resolving the issue of possession is not at all dependent upon resolving the issue of the premature termination payment, and thus, the latter issue properly could not be raised in the prior unlawful detainer action which, as we have indicated, is limited only to the issue of possession and the statutory incidents thereto.

Moreover, when the findings of fact of the trial court in the prior unlawful detainer action are read in the context of the limited jurisdiction afforded by RCW 59.12, it is clear

the court did not interpret paragraph 17 of the lease for purposes of the case at bar. The court's findings of fact Nos. 7 and 8, quoted previously, merely make a factual recital that the appellant had the option of continuing the lease until the $3,000 premature termination payment was made, but did not exercise it, and that the $3,000 was not paid. The court made no finding nor expressed any conclusion as to whether or not the $3,000 *was still owing,* and the absence of such a finding or conclusion is doubtless due to the trial judge's recognition that he had no jurisdiction under the unlawful detainer statutes to resolve such a question when its resolution was not necessary to his determination of the right of possession. Although the court's finding of fact No. 8 does state that "neither plaintiff nor defendants had any further rights under the Lease," the finding must be interpreted to mean that the parties had no further rights under the lease which the trial court properly could determine within the limits of unlawful detainer jurisdiction, *i.e.,* no further rights as to possession of the subject property.

Therefore, we hold that the doctrines of collateral estoppel and res judicata do not require summary judgment in favor of the respondents as to appellant's claim in the instant case for the $3,000 premature termination payment. As permitted by CR 52(a)(5)(B), the trial court entered no findings of fact and conclusions of law and therefore we do not know whether or not the trial judge based his summary judgment dismissing the appellant's claim upon the judgment in the prior unlawful detainer action. In any event, in view of our holding that the doctrines of collateral estoppel and res judicata are inapplicable, we must determine whether the trial court's judgment may be sustained on other grounds, testing its validity against the interpretation properly to be given the parties' lease as a matter of law.

■ Preliminarily, we observe that where there is no dispute as to any material fact and therefore, if it appears

that one of the parties is entitled to judgment as a matter of law, summary judgment is the appropriate remedy. CR 56(c). The trial court entered summary judgment denying appellant's motion for summary judgment for its $3,000 premature termination payment claim and granting respondents' motion for summary judgment on its $800 counterclaim and dismissing appellant's complaint. In reviewing this judgment, we are required, as was the trial court, to review the material submitted for and against the motion for summary judgment in the light most favorable to the party against whom the motion is made. Moreover, a summary judgment may be deemed properly granted only if, from all the evidence, reasonable men could reach but one conclusion. *Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974); *Hewitt v. Miller*, 11 Wn. App. 72, 521 P.2d 244 (1974).

Appellant's motion for summary judgment was based primarily upon paragraph 17 of the lease between the parties which, for convenience in reference, we again quote in full:

17. OPTION To TERMINATE. Lessor may effect a termination of this lease upon the expiration of the initial five years of the lease term or anytime thereafter. This may be accomplished by Lessor giving 7 months written notice to Lessee of his desire to terminate. Upon the expiration of that seven month period this lease shall be deemed automatically terminated and Lessor shall thereupon pay Lessee $15,000.00 in consideration of the premature termination.

2. Lessee may terminate under the same provisions as in 17 (1) relating to the Lessor's option to terminate, provided, that Lessee pay Lessor $3000.00 in consideration of the premature termination, and, at Lessor's option the lease shall not be deemed terminated until such ["payment" or "amount"] is paid.

Appellant interprets paragraph 17 to mean, in the case of the exercise of the option to terminate by the lessee, that upon the giving of the requisite 7-month notice, the lease will terminate at the end of 7 months, at which point the

lessee will owe the lessor $3,000 as consideration of the premature termination, which payment the lessor has the option to enforce by delaying termination of the lease (and thereby continuing the lessee's duty to pay rent, and meet other terms of the lease) until the $3,000 payment is made; the lessor is not required to delay termination of the lease, but may elect to permit termination prior to receipt of the $3,000 which, nevertheless, is owed to him.

Respondents' interpretation of paragraph 17 is radically different. Respondents suggest that there is a difference between section 1 of paragraph 17, relating to the lessor's option to terminate, and section 2 of paragraph 17, relating to the lessee's option to terminate. Respondents contend that, in the case of the lessor, the lease by its own terms is "deemed automatically terminated" at the conclusion of the 7-month notice period, regardless of whether or not the lessor has made the $15,000 premature termination payment which is payable any time after such termination. In the case of the lessee, however, respondents urge that termination is not automatic, but rather takes place upon the occurrence of one of two conditions, namely, (1) payment of the $3,000 by the lessee, or (2) an election by the lessor to terminate the lease by waiving any right to the $3,000 payment.

We see nothing in the language of paragraph 17 to suggest an ambiguity which might permit explanation of the differences between the interpretations offered by appellant and respondents in terms of a factual dispute. In other words, there appears to be no genuine issue of material fact such that the court is barred from resolving the parties' dispute by summary judgment. See *Nashem v. Jacobson*, 6 Wn. App. 363, 492 P.2d 1043 (1972). Although the lease contract in question is not as artfully drawn as it might have been, it discloses no ambiguity on its face and therefore its meaning must be determined from its language without resorting to parol evidence. *Kinne v. Kinne*, 82 Wn.2d 360, 510 P.2d 814 (1973); see *Sons of Norway v.*

*Boomer,* 10 Wn. App. 618, 519 P.2d 28 (1974); *Prager's, Inc. v. Bullitt Co.,* 1 Wn. App. 575, 463 P.2d 217 (1969). Summary judgment is proper when the only dispute relates to the legal effect of language in a written contract. *George D. Poe & Co. v. Stadium Way Properties,* 7 Wn. App. 46, 498 P.2d 324 (1972); *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970). In determining the legal effect to be given language in an unambiguous written contract, we must ascertain the intention of the parties from the language employed in their agreement and all reasonable inferences therefrom; in this regard, words in a contract are to be given their plain and ordinary meaning unless context or definition dictates otherwise. *Schauerman v. Haag,* 68 Wn.2d 868, 416 P.2d 88 (1966); *Kittitas County v. Chicago, M., St. P. & P.R.R.,* 4 Wn. App. 768, 483 P.2d 1279 (1971); *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970).

Upon application of the foregoing principles to the case at bar, even giving the respondents every benefit of the doubt, we are unpersuaded that the interpretation of paragraph 17 of the lease urged by them is reasonable as a matter of law. Initially, we observe with reference to the respondents' suggestion that paragraph 17 permits the lessor, upon the giving of the notice, to "automatically" terminate the lease whereas there can be no automatic termination by the lessee, that section 2 of paragraph 17 clearly states, "Lessee may terminate under the *same provisions* as in 17 (1) relating to the Lessor's option to terminate, provided . . ." (Italics ours.) In other words, except as qualified by the proviso, there is no difference between the rights and duties of the lessor and the lessee. A plain reading of the proviso makes it clear that "automatic termination" is contemplated unless lessor exercises his option to delay termination of the lease until the $3,000 payment is made.

Further, it is quite apparent that the provision that $3,000 will be owing in the event of premature termination

operates independently of the provision relating to the lessor's option to defer termination until the payment is made. The proviso states: "[P]rovided, that Lessee pay Lessor $3000.00 in consideration of the premature termination, *and*, at Lessor's option the lease shall not be deemed terminated until such ["payment" or "amount"] is paid." (Italics ours.) Contrary to respondents' assertion, the proviso is stated in the conjunctive "and," not in the alternative "or." There is no ambiguity; the proviso clearly requires payment of the $3,000 *and, in addition* (not "or") the lessor has the option to defer termination of the lease until the payment is made. In short, the option operates as if it were "security" or "collateral" to help insure payment of the $3,000 in that it allows the lessor to hold the lessee continually liable for the payment of rent and for all other obligations under the lease until the money is paid.

In the case at bar, the appellant lessor had successfully obtained another lessee for the premises in question and therefore it chose not to exercise its option to hold the lessee respondents to the lease; however, the appellant's failure to exercise that option may not be interpreted reasonably to mean that the appellant waived its right to the $3,000 payment which, under the ordinary meaning of the word "and" as used in the proviso was a right in addition to the right to exercise the stated option.

We conclude that the appellant is entitled to payment by the respondents of $3,000 in consideration of the respondents' premature termination as provided in paragraph 17 of the lease and, for the reasons indicated, the appellant is entitled to summary judgment for that claim. In addition, appellant included in its complaint and incorporated into its motion for summary judgment a demand for costs and attorney fees in accordance with paragraph 13 of the lease which provides:

13. COSTS AND ATTORNEY FEES. If by reason of any default on the part of either party hereto, in the performance of any of the provisions of this lease, it becomes necessary for the other party to employ an attorney, the

said party in default agrees to pay all costs, expenses and attorney's fees expended or incurred by the other party in connection therewith.

Respondents contend that they are not liable for attorney fees, claiming that their failure to make the $3,000 premature termination payment does not constitute a "default" and that the matter was resolved in their favor in the prior unlawful detainer action. This argument as to paragraph 13 is similar and necessarily related to respondents' argument as to paragraph 17 of the lease which we have rejected, and therefore it similarly must be rejected.

We hold that the trial court erred in dismissing the appellant's complaint and in denying appellant's motion for summary judgment and, to that extent, the trial court's summary judgment in favor of respondents is reversed with the instruction that summary judgment be granted in favor of appellant. Appellant, however, has assigned no error to the trial court's grant of summary judgment to the extent that it awarded the respondents the sum of $800 plus costs and statutory fees on their counterclaim and therefore that portion of the judgment is affirmed.

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

FARRIS and WILLIAMS, JJ., concur.

Petition for rehearing denied April 16, 1975.

Review denied by Supreme Court June 9, 1975.